### POWELL vs. MATTHEWS.

A. being indebted to B. and others, received goods of B. to be sold under an agreement to account for, and make returns of, the sales. A. failed to state a large sale for cash made by him.

Held—

That if such failure were with the intent to defraud his creditors, it would sustain an allegation that " he had fraudulently concealed," &c., his property.

APPEAL from St. Louis Circuit Court.

NAPTON, J., *delivered the opinion of the Court.*

This was a suit commenced by attachment. The affidavit upon which the attachment was issued, alleges an indebtedness to the plaintiff Powell, to the amount of $774 39 for goods sold, &c., and that the plaintiff had good reason to believe, and did believe, that defendant had fraudulently conveyed, assigned, removed, concealed and disposed of his property and effects so as to hinder, defraud and delay his creditors, and that the defendant *was about to do* these things. The defendant filed his plea in abatement, denying the fraud. A trial was had, which resulted in favor of the plaintiff. This verdict was, upon application, set aside by the court, and after a mistrial, a second verdict was ultimately found for the defendant, upon which judgment was entered.

It appeared that Matthews, who lived in St. Louis, being indebted to the plaintiff, and also to the mercantile house of Kimm, Tewes & Harves, was permitted to take a certain amount of goods, under a written agreement to make a weekly account of his sales, and pay over the proceeds, after deducting certain charges. On the 27th January, 1844, Matthews sold to one Huber, goods amounting in value to $240 30, for which he received payment in cash ; but in his account furnished to the plaintiff of the sales of that day he only specified sales to the amount of $22 60. The plaintiff thereupon took out this attachment:

Upon the trial the Court instructed the jury—

1. That although the jury shall believe that the defendant failed to keep his contract given in evidence, that fact is not sufficient to prove that the defendant before or at the time of this attachment had assigned, conveyed, or disposed of, or concealed his property, or was about to do so.

2. Unless the jury believe from the evidence that the defendant had, prior to the issue of the attachment, made a fraudulent conveyance of his property with the intent to hinder, delay and defraud his creditors, or that he was about to do so, they must find for the defendant.

3. The sale to Huber cannot be called a fraudulent disposition of the property of the defendant, unless the jury believe that said sale was made with a fraudulent intent, for the purpose of hindering, &c.

4. The neglect of defendant, to make a correct return, and to pay over the proceeds of sale to plaintiff or for his benefit, was only a breach

of the defendant's contract, but such breach was not in itself a fraud as is contemplated by the attachment law.

5. Under the issue joined, unless the jury believe from the evidence, either,

1st. That the defendant had at the time of issuing the writ fraudulently conveyed, assigned, removed or concealed his property or effects so as to hinder, delay, &c., his creditors; or

2nd. That he was at that time about to do so, they must find for the defendant.

6. The failure on the part of defendant to perform the agreements read in evidence is no greater evidence of the facts charged in the affidavit, than would have been his failure to perform a parol or verbal agreement.

7. The concealment contemplated by the statute on the subject of attachment, means *secreting goods,* and not concealment of circumstances, or misrepresentation of facts, and this last mentioned conduct is no ground for issuing an attachment.

8. The point in controversy is not whether the plaintiff had reason for suspicion against the defendant, or reason to believe that he was acting improperly, but whether in fact the defendant was guilty of the facts charged in the affidavit. If he was not thus guilty in the opinion of the jury from the evidence, they must find for the defendant.

At the instance of the plaintiff the Court instructed the jury—

I. That if they believed from the evidence that at the time of issuing the attachment in this case, the defendant, Matthews, had fraudulently concealed his property, &c., with intent to hinder, defraud, &c., or

II. If he had fraudulently disposed of his property, &c., so as to hinder, delay, &c., or

III. If he was about to do these things, he was liable.

A fourth instruction was asked but refused by the Court, and was as follows: "If the jury shall believe from evidence that the defendant concealed the sale to Huber on the 27th January, 1844, from the plaintiff, with a view to defraud, hinder or delay his creditors, the plaintiff is entitled to a verdict."

A motion for a new trial was made by the plaintiff, but was overruled. A bill of exceptions was taken, preserving the testimony, and the instructions, and the case bought here by appeal.

The whole case turns entirely upon the instructions, which have therefore been copied in detail. The first one given by the Court at the instance of the defendant is correct. The mere failure of Matthews to

perform his contract was certainly not a fraudulent concealment, or disposition of his property. His failure to return the sale made to Huber may have been accidental, or may have resulted from the best motives. The second instruction is not in all respects unobjectionable; it speaks of a fraudulent *conveyance* of property, with intent to hinder or delay creditors, as the only circumstance which created such a fraud as authorized an attachment. The statute enumerates concealment, assignment, &c.; but the fifth instruction which is couched almost in the very language of the act, explains the law on this point so clearly, that the jury could not have been misled by the second. The third instruction lays down the law applicable to the sale made by Matthews to Huber correctly; but it is surprising that the instructions should have been accompanied with the fourth and seventh. The fourth instruction leaves the jury no alternative; they are informed that the sale to Huber, and the false return of the sales of that day to Powell, was *only* a breach of contract, and that a mere breach of contract *in itself,* was not sufficient to authorize an attachment. The last proposition is true, and is only a repetition of the first instruction, but the first clause assumes the very point in issue, viz: whether this breach of contract was not also accompanied with a fraudulent intent to hinder and delay creditors. The Court declares first, that a mere breach of contract is no ground for an attachment, and so far is right enough; and second, that the conduct of Matthews in his transaction with Huber was only a breach of contract. The inference is plain, that the attachment could not be maintained on the evidence, for no other testimony was offered except that relating to the concealment of the sale to Huber.

The seventh instruction explains more fully the views entertained by the Court. That instruction declares, that the concealment referred to in the statute, must be a concealment of goods, and not of facts and circumstances. This distinction we confess ourselves unable to appreciate. If Matthews had packed away in his cellar goods to the value of one thousand dollars, with a view to defraud his creditors and prevent them from collecting their debts, this is conceded to be a fraud within the meaning of the statute; but if he sells the same goods and puts the money in his pocket with the same intent of cheating his creditors by the operation, it is regarded as a mere concealment of circumstances we suppose, and therefore not such a concealment as is reached by the attachment law. The statute uses the phrase "*goods and effects.*" The money for which the goods were sold to Huber was as capable of being concealed as the goods were, and the concealment of the money

is surely not less a fraud, because it was accompanied with a concealment and misrepresentation of facts and circumstances.

The three instructions which the Court gave for the plaintiff are merely repetitions of the fifth instruction given at the instance of the defendant. We are unable to perceive any reason why the fourth, which the plaintiff asked, was not also given. If that be not the law, it follows that though the jury believed a sale was made to Huber, on the 27th of January, of goods to a large amount, and that the defendant concealed this fact from the plaintiff for the express purpose of defrauding him, yet it did not authorize an attachment.

In short, the instructions given and those refused, taken together show that the Court took from the jury the question of fraudulent intent entirely, and that if the instructions were followed, a verdict could only be found one way. It seems to have been the opinion of the Court which tried the cause, that the only concealment intended by the statute regulating the issuing of attachments as a ground for the writ, was a concealment of goods, and that any number of fraudulent falsehoods told with an express design of cheating a man's creditors, would not justify the creditors in believing that such debtor intended to effect his apparent purposes. We do not so understand the statute, and Judge SCOTT concurring, the judgment will therefore be reversed, and the cause remanded.