## H. & J. MYERS v. JOSEPH FARRELL.

1. ATTACHMENT—"ABOUT TO REMOVE."—If the debtor entertains a purpose, and is making preparations to carry it out, to remove himself or property out of the state with the intent not to pay his debts, his creditors are entitled to the writ of attachment. Further than this, any attempt to fix a definite rule as to any time within which the inquiry is to be limited, would be hurtful in practice, and might defeat the remedy in meritorious cases.

2. SAME—OBJECT OF THE REMEDY.—"About," is an ordinary word, of no artificial or technical significance, and should receive, in attachment proceedings, the rendering given to it in common parlance. All that is necessary, is that the "cause" on which the attachment rests shall exist at the time the writ is sued out. The leading purpose being, from the beginning, to enforce a remedy for creditors, by proceedings *in rem*, against non-resident, absconding and fraudulent debtors.

3. SAME—CONSTRUCTION.—As the devices and practices of those who set about cheating and defrauding, are almost infinite in variety and fertility, courts should be cautious in laying down rules of interpretation which may be evaded and make the success of such schemes more easy. Powell v. Matthews, 10 Mo. 49; Montague v. Gaddis, 37 Miss. 453.

4. SAME.—If the purpose to remove exists, and may be carried out in one, two, three or several weeks, or months, and the object be to evade or delay creditors, the writ may issue. And this purpose, like all other motives, may be inferred from the speeches, acts, and conduct of the party, although his movements may not be characterized by "fright," "speed" or "haste."

5. MEASURE OF DAMAGES FOR WRONGFUL ATTACHMENT.—In a case where it is conceded or manifest that there was no malice or intention of oppression on the part of the plaintiff or his agent who impetrates the writ, the damages, if any, should be limited to those actually sustained.

6. SAME.—And in such cases, if the defendant's store be closed and business interrupted, mere possible or speculative expectations of profits in that and other collateral advantages, are not to be taken into account.

7. CASE AT BAR.—For errors, commited by the circuit court in instructions given and instructions refused, and which may have misled the jury and thus caused excessive estimate of damages, the judgment is reversed.

8. SAME—PROVINCE OF JURY.—It is the exclusive province of the jury to determine, in cases of wrongful attachment, the *quantum* of the defendant's damages. And this court will not substitute its own judgment for that of the jury. But in cases where the damages are so out of proportion to the wrong done as to produce a conviction that they were not etsimated upon the basis of compensation, but upon wrong premises, and were the result of haste, inconsiderateness or intemperance, and that the court by its agency contributed to the error, this court will order a new trial.

ERROR to the circuit court of Hinds county, 1st district. BROWN, J.

The opinion of the court contains a sufficient statement of the facts of the case.

*Shelton & Shelton,* for plaintiffs in error, and

*Johnston & Johnston,* for defendant in error,

Argued the cause orally and filed elaborate arguments, chiefly upon the evidence, too long for insertion and too compact for insertion here.

SIMRALL, J.:

This writ of error is prosecuted to revise the judgment of the circuit court on the trial of the issue arising upon a traverse of the affidavit upon which the attachment issued. The grounds of the attachment set forth in the affidavit are the 2d, 4th, 5th and 6th, enumerated in sec. 1420, p. 286, Code of 1871. The assignments of error are very numerous, but may be classified into three heads. 1. The improper admission of testimony; 2. The giving to the jury the fourth instruction, asked by the defendant, and refusing an instruction asked by the plaintiff; 3. The refusal to grant a new trial because the verdict is against law and evidence. The theory of the plaintiff's case was, that Farrell, the debtor, had formed a purpose, at and before the issuance of the

attachment, to remove himself and property out of this state, with intent to evade his debts; 2d, and that he was with fraudulent intent about to make such disposition of his property as would defeat his creditors.   Farrell was a merchant in Jackson, engaged in miscellaneous trade, dealing in groceries, family supplies, liquors by the small, and keeping also a restaurant.   The effort of the plaintiff was to prove that Farrell had determined to remove from this state as soon as his arrangements were completed; that what for a time detained him was, that he might sell off his goods for cash, with the purpose not to apply the money to his creditors, and when that was done, retire from the state with nothing tangible and accessible to legal process.

It is propounded as a legal principle by the creditor, the plaintiff in error, that if the debtor, at the time the attachment was sued out, had formed the purpose to remove himself and his property, and was converting his goods into money so as to put the property beyond the reach of his creditors, with intent not to pay his debts then he was amenable to the attachment on one or two of the grounds stated in the affidavit.

It is not denied that the "cause" upon which the attachment rests must "exist" at the time the writ emanates.   What is the meaning of the terms "about to remove"?   "About"—does that imply the next hour, or day, or week, or month?   Does the statute convey the idea that necessarily the act must be done within any definite space of time?   The implication is quite strong that the "removal" will shortly occur, but no more definiteness and precision is set forth than the word "about" imports.

Among the definitions or senses in which the word is used, given by lexicographers, are, "near to, in performance of some act," "concerned in," "engaged in," etc. Webster's Unabridged Dictionary.   It is an ordinary word of no artificial or technical signification, and

should receive the rendering which is given to it in common parlance. If the debtor is engaged in the act, or is near to the performance of the act of "removal," if he entertains the purpose and is making preparations to carry it out, then the creditor is entitled to the writ. It would be hurtful in practice to attempt to declare precisely what is implied in the terms "about to remove." For experience would show that many meritorious cases would fall within the intendment of the remedy, which might be excluded by a rule laid down in advance. We think it wiser and safer in the administration of practical justice, to leave each case, as it arises, to be governed by its own special facts.

A leading purpose of the attachment laws, beginning with the amendment of 1844, is to secure to the creditor a remedy against the dishonest and fraudulent debtor. The earlier statutes regarded the writ as in the nature of a *distringas,* to compel the appearance of the debtor to answer the suit. Under existing law, it is a proceeding "*in rem,*" to enforce the debt·from the non-resident, absconding or fraudulent debtor. As the devices and practices of those who set about cheating and defrauding are almost infinite in variety and fertility, courts should be cautious in laying down a rule of interpretation which might be evaded, and make success in such schemes more easy.

We concur in the negative reponse made by the court, in Powell v. Mathews, 10 Mo. 49, to the argument, that as the statute gave the writ when "the debtor fraudulently conveyed, assigned, concealed or disposed of his property and effects," or was about to do so, it had no application, as was said, where the property was turned or about being turned into money with such intent. The judges, giving life and power to the intendment and reason of the law, said that there was no difference between hiding out of sight a thousand dollars worth of goods and selling the same goods for cash,

and putting the money in the debtor's pocket with intent to cheat. So, too, our predecessors, giving expression to the spirit and intendment of the letter, declared: That although the debtor had removed or was " about" to remove " property," that was not necessarily enough. It must be a removal to that extent which would not leave enough here to respond to the debt. It must be such removal as would endanger collection here, as would drive the creditor to another state to recover his debt, enough not being here to satisfy the ordinary final process. Montague v. Gaddis, 37 Miss. 453.

The plaintiff in error complains that the 4th instruction given for the defendant, limited his rights as a creditor to narrower limits than the terms of the law; in this, that the court told the jury, that in order to sustain the allegation that the debtor was " about to remove himself or his property out the state, the plaintiff must 'prove a design or purpose speedily to do so.' "  The plaintiff urges, also, that the effect of this instruction was to mislead the jury in the consideration of much of the testimony which he offered, and which tended to sustain the affidavit. We are not prepared to say that the instruction may not have had the injurious effect complained of, and may not have conveyed to the jury a mistaken idea of the law, as applicable to the facts. The tendency of the plaintiff's testimony was to establish the proposition (we express no opinion as to its weight or sufficiency) that Farrel; having expressed an intention to remove, was converting his goods with rapidity into cash, refusing to apply the money to this and other mercantile debts; that his, stock was being rapidly diminished; in the mean time no replenishments were made; that he had withdrawn money several months before, to defray pleasure excursions of himself and family, and to pay for goods which were shipped to a distant market, and that this mode

of business and conduct warranted the inference; that within a few weeks more, nearly or quite all of the goods would have been turned into cash, and then the plaintiff, with the proceeds, would remove from the state. The plaintiff insists, that although the jury might have been satisfied that the defendant was thus dealing with his goods, yet if it took such time to dispose of them before removal, as that the removal would not be "speedy," then there was no ground for the attachment. If a purpose exists to remove, and the scheme may be carried out in one, two, three, or several weeks or months, and if this be contemplated with a view to evade or delay creditors, the writ may be taken out. The purpose, like all other motives and intents, may be inferred from the speeches, acts and conduct of the party. And further, the word "about" may be so satisfied in meaning, although the movements of the debtor may not be characterized by "fright," speed or "haste;" thus leaving each case to be judged of by its peculiar circumstances.

We think that if a debtor, whose property consists of merchandise, has determined to remove himself and property, or the latter, out of this state, and after forming such plan, and as part of it consists in converting his merchandise into cash, with the intent not to pay his debts, but postpones his removal until this has been done, he is liable to attachment, under the fourth ground stated in the affidavit; but if, in addition to that, he thus disposes of his property, with intent to remove out of the state, with the money, a case may be made out under the first ground of attachment.

The court refused to grant the charge to the jury, propounded by the plaintiff after instructing them at the defendant's instance, "to the effect that the jury may infer the purpose to remove, at the date of the attachment, from the previous expressions of such design, and the acts of the debtor; nor is it necessary that the

defendant purposed immediate removal, if from the evi-
dence that the design existed, and his actions purposed
to carry that design into execution, at some short time
thereafter and as soon as he had prepared his affairs for
removal, and without paying his debts." The with-
holding this charge, connected with the ruling con-
tained in the defendant's 4th instruction, was calculated
to mislead the jury. This prayer contained a modifica-
tion of defendant's 4th charge which might have en-
abled the jury to make a judicious application of the
law to the facts.

It seems to us that the verdict is excessive. This
for itself would not, under the rules which have uni-
formly governed this court, warrant a new trial. The
damages must be so excessive as to be out of proportion
for the wrong done, and to produce the conviction that
they were not estimated upon the basis of compensa-
tion, but were the result of haste, inconsiderateness or
intemperance. But if the record shows that the jury
may have proceeded upon wrong premises, and the
court, by its agency, contributed to the error, a case
does arise for correction here. Nor in so doing, does the
appellate court trench upon the exclusive sphere of the
jury, or substitute its judgment for that of the jury, as to
the *quantum* of damages. It is conceded that there was
no malice or oppression meditated or intended by the
creditor or his agents. It is quite manifest that the agent
and attorney who impetrated the writ believed that
the information upon which he proceeded justified this
remedy. It is a case, therefore, limited to such dam-
ages as the defendant has sustained.

Sec. 1462, of the Code of 1871, enlarges, perhaps, the
elements of damages—"loss of trade and special injury
to business" are to be taken into the account. But
how far may the jury go? If the storehouse of a retail
merchant is closed up by an improvidently issued
attachment, must the jury go into a calculation of

profits which the trader may make, which are contingent and uncertain, often more plausible upon paper than are actually realized? May they estimate the probable profits in collateral business, such as the loss of profits on a wood contract, or on a trade in cider in a distant state; the loss of profits which ensued from breaking up a vast scheme to supply this state and the southwest with cider and oysters? On a basis like this, the defendant estimated that the levy of attachments for about $1,000 on a stock of goods worth about $1,100 had damaged him $17,000 at least. The admission of this testimony against the plaintiff's objection doubtless induced the jury to think that the loss of these conjectural and problematical profits, although exaggerated by Farrell, were to be taken into the estimate. We cannot think that the legislature meant that so wide a latitude should be given as to compute losses of profits in trade so speculative and remote, and so incapable of probable certainty, as may have been allowed in this case.

Nor should the fact be overlooked that the defendant, by his repeated refusal to pay debts presented for creditors by the Messrs. Green, by the Capital State Bank, by Mr. Bell, and by the attorneys, in the early summer, and his suffering an attachment for only $40 of rent for his storehouse to be levied on part of his goods, were of themselves enough to shake his credit, and bring upon him the injuries resulting to a merchant from that misfortune.

After declining to pay his debts, the defendant having, as he says, a "surplus of money," started with his family, except one member, on a pleasure excursion to New Orleans; whilst there he embarked in an onion speculation. From New Orleans he went to St. Louis and other points in the west, and engaged in a cider adventure, and was absent two or three months from the state, and from that time until the attachment was

issued, and afterwards, was only here a short time. It is difficult to see how he would have "surplus money" to spend in a pleasure excursion with his family, when one and another and another of his mercantile debts were overdue and unpaid. Nor are we able to understand how he could, with a reasonable prospect of success, expect to adventure so extensively in the cider and oyster trade, when his finances were in that condition that he could not, or would not, pay for the goods upon which he was trading in Jackson.

Judgment reversed and *venire facias de novo* awarded.