E. MARQUEZE ET AL. *v.* JACOB SONTHEIMER.

1. GROUNDS FOR ATTACHMENT. *Fraudulent contracting of the debt.*
   A purpose to defraud is necessary to constitute a fraudulent contracting of the debt within the meaning of the eighth ground for attachment contained in Code 1880, § 2415.

2. SAME. *False representations. Subsequent to the contract.*
   False representations of the debtor, after contracting the debt, that he has property from the proceeds of which he will pay, does not make the debt fraudulently contracted within this statute.

3. SAME. *Incumbrance on property. Effect as evidence of fraud.*
   The fact that he orders goods, promising to send a sight draft on receipt of them, when he has incumbered a large part of his property, is a circumstance for the jury, but not alone conclusive of his intent to defraud.

4. SAME. *Fraudulently contracted debt. Example.*
   If, as an inducement to the seller to ship the goods, he promises to send a sight draft to pay for them, and at the same time entertains the purpose not to give the draft, the debt is fraudulently contracted.

5. SAME. *Purchaser's belief of his own solvency.*
   The fact that he believes when he orders the goods that he will be able to pay for them does not acquit him of fraud, for he may intend not to do this.

6. DAMAGES FOR WRONGFUL ATTACHMENT. *Subsequent levies by others.*
   Judgment creditors who levy executions in consequence of an attachment are severally responsible, and the attaching creditor is not liable for the injury occasioned by them.

7. SAME. *Measure of damages. Compensation.*
   Under Code 1880, if a plea in abatement is sustained, the recovery is confined to compensatory damages caused by the issuance of the attachment.

8. DAMAGES FOR WRONGFUL ATTACHMENT. *Loss of business.*

Loss of business as to goods seized, caused by the seizure, may be a factor in the computation of damages if shown as a matter of fact and not as the opinion or estimate of witnesses. *Alexander* v. *Jacoby*, 23 Ohio St. 358.

9. SAME. *Expenses of defence. Deprivation of property.*

Such damages are allowable in an issue as to the rightfulness of an attachment as would be reasonable in an action on the attachment bond, as for instance the expenses of the defence and loss occasioned by the seizure or sale of property.

APPEAL from the Circuit Court of Holmes County.

Hon. C. H. CAMPBELL, Judge.

The appellee, who lived in this State, at Lexington, forty-two years, was keeping a store there on Oct. 20, 1880, and wrote to E. Marqueze & Co., shoe dealers in New Orleans, enclosing an order for shoes to the amount of three hundred and forty-nine dollars and fifty cents, promising to send them a sight draft on receipt of the goods. Relying upon this assurance they shipped the articles, and wrote that remitting he could deduct five per cent for cash. No answer was received; and, on Dec. 3, 1880, they wrote again, suggesting that he had probably overlooked the matter. On Dec. 24, 1880, he wrote them that, owing to bad weather and miserable roads, he was unable to ship his cotton and therefore did not send the draft, but he had no intention to keep them out of their money, and thought he would be able to ship in a week or ten days, when he would remit. The sight draft was not sent. In February, 1881, an attorney presented the bill to the appellee, who asked and obtained further time. When the appellee sent the order he owned a farm of eleven hundred and twenty acres, a store containing three thousand dollars' worth of goods, did a business of seventeen thousand dollars per annum, with a profit of seven thousand, and considered his credit to be twenty-five thousand dollars. But a deed of trust to Richardson & May covered his property, except the stock of goods and his claims, judgments against him for over one thousand dollars remained unpaid, and he owed about three thousand dollars unsecured. Seven hundred dollars in amount was on April 3, 1881, presented by attorneys for payment; and

next day Marqueze & Co. attached six hundred and eleven dollars and forty-seven cents worth of goods of his stock, upon the ground, among others, that he fraudulently contracted the debt sued on. The appellee then offered their attorney two hundred and fifty dollars in cash and security for the balance ; but the judgment creditors levied executions and destroyed the appellee's business, and wholesale merchants refused to extend him further credit. On April 11, 1881, the appellee executed another deed of trust to Richardson & May on all his property to obtain money, which he used in paying some of his creditors.

At the return term the appellee traversed the alleged grounds of attachment, and claimed damages in the sum of five hundred dollars for an attorney's fee, five thousand dollas for injury to his mercantile business, and six thousand dollars for injury to his credit as a merchant. A jury decided in his favor and assessed his damages at ten thousand dollars, with one hundred and fifty dollars for the attorney's fee, whereupon he remitted the recovery for the attorney's fee, and judgment was entered against Marqueze & Co. for ten thousand dollars only. This firm and the sureties on their attachment bond moved for a new trial upon the grounds that the verdict was against the evidence and the damages excessive, and that the court erred in giving the fourth, fifth, and sixth instructions for the appellee. The court, however, overruled this motion upon the appellee entering a remittitur for five thousand dollars, and Marqueze & Co. having obtained judgment for three hundred and seventy dollars, it was ordered that this sum might be applied as a credit upon the appellee's recovery.

The appellants, Marqueze & Co. and their sureties, then presented their bill of exceptions. From this it appears that the appellee and his witnesses testified, without objection, that although slow in paying his debts Sontheimer had good credit before the levy, that he was prevented from paying Marqueze & Co. by the bad weather which began in September, 1880, but that he did not apply to Richardson & May for a draft for them, although he had been notified in November that no draft would be paid until approved ; that he was actually damaged in his business to an amount variously estimated by the

witnesses from fifteen hundred to five thousand dollars; that if his profits were seven thousand dollars per annum he probably lost twenty-five hundred dollars thereof; that the damage to his credit was inestimable, and that a reasonable attorney's fee in a case of this magnitude, where eleven thousand five hundred dollars damages were claimed, was from one hundred and fifty to two hundred and fifty dollars.

On the foregoing evidence, the appellants asked, among others, the following charges, which were modified by the court, over their objection, by inserting the words in brackets:
5. "Any words, acts, or deeds of parties designed to mislead a person by the parties making such misrepresentations, and by which he is induced to part with his property on the faith of such misrepresentations, and suffers loss thereby, is fraud; and, if the defendant, Jacob Sontheimer, made certain representations to E. Marqueze & Co., the plaintiffs (which representations were untrue and not in good faith), on the faith of which they were induced to part with their goods to him, for which suit is brought, and the representations turned out to be false (and said representations were known to be untrue at the time they were made), the jury should find for the plaintiffs, even though they believe the representations were not made originally with intent to defraud the plaintiffs."
6. "If the defendant, at any time after the purchase of the goods for which suit is now brought, made any representations to the plaintiffs that he had possession or control of any cotton or other property, out of the proceeds of which he would pay them for said goods, and that said representations were untrue (at the time made), the jury must find for the plaintiffs."
9. "Fraud in fact or in law constitutes ground for attachment; and if the jury believe from the evidence that the necessary consequence of the acts of Sontheimer (and known to Sontheimer at the time he acted) was to prevent the plaintiffs from being paid their indebtedness, they must find for the plaintiffs."

The appellants also asked the court to instruct the jury, 7, "that if they believe from the evidence that the defendant was under a deed of trust whereby he could not control or dispose of his property without the consent of the trustee

or the beneficiaries in said instrument, and that with such knowledge he obtained goods from the plaintiffs under a promise to pay, which he knew he could not fulfil, they must find for the plaintiffs." This charge the court amended over the appellants' objection by substituting for the last six words this language: "this is a fact to be considered by the jury, as to whether the defendant acted fraudulently or not."

For the appellee the court gave the following charges over the appellants' objection: 4. "If Sontheimer believed, or had reason to believe, at the time he ordered the goods from the plaintiffs, that he would be able to send a sight draft which would be paid for the amount of the goods ordered, on their receipt, then said debt was not fraudulently contracted." 5. "To constitute a fraudulent contracting of the debt the defendant must have known, or had good reason to believe, at the time he ordered the goods, that he could not comply with the promise contained in his order." 6. "The mere fact that Sontheimer promised to send a sight draft upon the receipt of the goods, and failed to do so, is not proof that the debt was fraudulently contracted, unless there is other evidence of an intent on Sontheimer's part to commit a fraud on the plaintiffs."

The court also gave the following charge for the appellee, without objection: 7. "If the jury believe from the evidence that the attachment in this case was wrongfully sued out, they should find for the defendant, and should award him such damages as from the evidence they believe him to have suffered by reason of the attachment, and may take an account of a fair attorney's fee for one attorney in defending the attachment; also any actual damage due to his loss of business as a merchant, or actual damages by loss of credit which they believe from the evidence was done to the defendant by the attachment in this case."

*Nugent & McWillie*, for the appellants.

1. The debt was fraudulently contracted, and the verdict should have been for the plaintiffs in attachment. By modifying the charges asked by the plaintiffs, the court adjudged that Sontheimer must have known, at the time he stated his ability and purpose to send the draft, that his statement was

untrue, and that the representation must have been not only untrue, but made in bad faith. This is not law. The rule is that, if a person makes a statement without knowing whether it is true or false, but believing it true, and it turns out untrue, he is guilty of fraud in law and must make his statement good. *Parham* v. *Randolph*, 4 How. 435 ; *Davidson* v. *Moss*, 5 How. 673 ; *Halls* v. *Thompson*, 1 S. & M. 443; *Gilpin* v. *Smith*, 11 S. & M. 109 ; *Oswald* v. *McGehee*, 28 Miss. 340 ; *Rimer* v. *Dugin*, 39 Miss. 477 ; *Estell* v. *Myers*, 54 Miss. 174 ; *Smith* v. *Richards*, 13 Peters, 26. The fourth, fifth, and sixth instructions for the defendant are more objectionable. The fact, if it had been proved, that the defendant believed, when he promised the draft, that he could give it, does not acquit him of fraud. He need not have known that he could not comply with his agreement. His belief has nothing to do with the question. If he knew he could give the draft and intentionally withheld it, this is fraud in fact. The evidence, however, shows that his property was mortgaged to Richardson & May, and he could give no draft without an approval for which he never applied. The condition of the roads, which he makes a pretext, was as well known to him when he ordered the goods as afterwards. Evidently, when he promised to send the draft, he intended to obtain the shoes and never perform his agreement.

2. The damages, even after remittitur, were grossly excessive. Sontheimer had no credit as a merchant. That is imaginary, and his six thousand dollar item should have been disregarded. Speculative damages were proved and, under an erroneous instruction, allowed. Even this instruction was exceeded by the jury. The statute (Code 1871, § 1462) on which the charge may have been based is altered by Code 1880. There was no malice in this case. *Myers* v. *Farrell*, 47 Miss. 281. The language of the later statute is " actual damages." The full extent of the injury done must furnish the test of the defendant's recovery under this law. *McCullough* v. *Walton*, 11 Ala. 492 ; *Warner* v. *Ostrander*, 44 Ill. 356. In the estimate of actual damages, injuries to character and credit are not to be considered. *Mitchell* v. *Mattingly*, 1 Met. (Ky.) 237. Only the debtor's actual outlay for travelling expenses,

hotel bills, and an attorney's fee to have the attachment dissolved, with the depreciation in value of the goods seized, can be taken into the estimate of damages. *Phelps .v. Coggeshall*, 13 La. Ann. 440. All beyond this is pure speculation. The actual expense and loss occasioned by the writ is the measure of damages. *Campbell* v. *Chamberlain*, 10 Iowa, 337. This expense includes the costs of the original proceeding and reasonable counsel fees for setting aside the attachment. *Dunning* v. *Humphrey*, 24 Wend. 31 ; *Schuyler* v. *Sylvester*, 28 N. J. L. 487 ; *Hayden* v. *Sample*, 10 Mo. 215 ; *Corcoran* v. *Judson*, 24 N. Y. 106 ; *Littlejohn* v. *Wilcox*, 2 La. Ann. 620 ; *Moore* v. *Withenburg*, 13 La. Ann. 22 ; *Trapnall* v. *McAfee*, 3 Met. (Ky.) 34 ; *Seay* v. *Greenwood*, 21 Ala. 491 ; *Morris* v. *Price*, 2 Blackf. 457. The actual loss from the deprivation of the use of property — the natural and proximate consequence of the breach — may be recovered also ; but injuries to a merchant's credit, or injuries consequent on loss of credit occasioned by the attachment, are not recoverable ; nor are supposed injuries to business. *Heath* v. *Lent*, 1 Cal. 410 ; *Pettit* v. *Mercer*, 8 B. Mon. 51 ; *Fleming* v. *Bailey*, 44 Miss. 132 ; Drake on Attachment, § 175.

*Frank Johnston*, for the appellee.

1. Upon the question whether the attachment issued rightfully, the evidence sustains the verdict, which cannot be reversed unless material error was committed in the charges. To make the incurring of the debt fraudulent there must be some overt act, as fraudulent concealment where there is a duty to make disclosures, or misrepresentation or deceit practised on the seller. Fraud must be *acted*, not merely thought. It must consist in some outward manifestation, and not merely exist as an emotion in the mind of the purchaser. Even if a bare intention not to pay at the time of the purchase is a fraud on the seller, and makes the debt fraudulently contracted — insolvency, the fact of the purchase and promise to pay and failure to pay, do not constitute proof of the fraudulent intent not to pay. It can be asserted fairly that there is not a case in America where these facts have been regarded as sufficient. There must be additional proof of the fraud. *Patton .* v. *Campbell*, 70 Ill. 72 ; *Morrill* v. *Blackman*, 42

Conn. 324 ; *Bell* v. *Ellis*, 33 Cal. 620 ; *Smith* v. *Smith*, 21
Penn. St. 367 ; *Nichols* v. *Pinner*, 18 N. Y. 295. The Su-
preme Court of Illinois declares that there must be some
fraudulent pretence or representation coupled with the design
not to pay. *Henshaw* v. *Bryant*, 4 Scam. 97. So in *Conyers*
v. *Ennis*, 2 Mason, 236, it was held that a purchase by an
insolvent, without any device or fraudulent representations,
is not illegal. Insolvency and knowledge of it, and inability
to pay and knowledge of that, and no reasonable expectation
of being able to pay, are not enough. There must be some
artifice, trick or false pretence. *Noble* v. *Adams*, 7 Taunt.
59 ; *Rodman* v. *Thalheimer*, 75 Pa. St. 232 ; *Redington* v.
*Roberts*, 25 Vt. 686 ; *Garbutt* v. *Bank*, 22 Wis. 384 ; *Biggs* v.
*Barry*, 2 Curtis, 259 ; *Bidault* v. *Wales*, 20 Mo. 546. The
definition and rule in *Donaldson* v. *Farwell*, 93 U. S. 631, con-
tained as an essential element a fraudulent concealment of
the insolvency. There the goods were secreted and with-
drawn from the business. In *Klein* v. *Rector*, 57 Miss. 538,
Judge Chalmers, delivering the opinion of the court, said that
there must be shown such fraud upon the part of the purchaser
as will fall but little, if at all, short of supporting a prosecu-
tion for obtaining goods under false pretences.

2. The damages assessed were not excessive, and no error
was committed upon this branch of the case, of which the ap-
pellant can complain. The question of law contained in the
seventh instruction was never presented for consideration to the
Circuit Court. It is a new question, raised for the first time
on the appeal. The instruction cannot be considered by the
appellate court. *Temple* v. *Hammock*, 52 Miss. 360 ; *Smith* v.
*Sparkman*, 55 Miss. 649. It follows necessarily that the rule
it announces must be taken as the correct rule of law in this
case. The question whether the verdict is excessive must be
presented in form and substance as stated in the motion for
a new trial, that the damages awarded are excessive, and not
warranted by the evidence in the case. No objection was
made to the evidence. As it stands, it fully meets the re-
quirements of the charge. It is a great hardship that a man's
business should be broken up, and a credit of twenty-five
thousand dollars, gained by years of honest endeavor, destroyed

by charges so ill advised and so absolutely groundless as to suggest recklessness or malice. In any view of the case, the verdict is not large. The circuit judge caused the verdict to be remitted by the defendant to five thousand dollars. In view of all the evidence, it is manifest that it should not be further reduced.

CAMPBELL, J., delivered the opinion of the court.

There was no error in the modification by the court of the fifth, sixth, seventh, and ninth instructions given for the plaintiffs. The sixth was not proper after being modified. It related to representations made by the defendant after the purchase of the goods. The modification of the fifth and ninth instructions introduced into each of them the qualification, before omitted from them, that the representations made by the defendant to obtain the goods must have been known to him to be untrue, and therefore were not made in good faith. A purpose to defraud is necessary to constitute a fraudulent contracting of the debt within the meaning of the eighth ground for attachment contained in § 2415 of the Code of 1880.

The seventh instruction as asked presented the proposition that, if the defendant was in a condition, with respect to his property, which disabled him to dispose of it by his own act, and knowing this he obtained goods from the plaintiffs by a promise to pay which he knew he could not perform, the jury must find for the plaintiffs. The evidence was that the defendant had executed a deed of trust conveying part of his property, but not all of it, and it was to this evidence that the instruction was intended to apply. There was no evidence of a complete disposition of his property so as to cause the defendant to know, when he obtained the goods, that he could not send a sight draft for them as he promised; and it would have been improper to give the instruction as asked, because the testimony did not warrant the hypothesis of the total disability to pay, as promised, which alone could impart knowledge to the defendant that he could not do what he promised. The modification, by striking out the words " they must find for the plaintiffs," and substituting, " this is a fact to be considered by the jury, as to whether the defendant acted fraud-

ulently or not," is all that made the instruction proper. The fact that the defendant had incumbered a considerable part of his property was to be considered by the jury in passing on his conduct. With the modification the instruction is of doubtful propriety, because of the want of evidence to which to apply it as expressed. It should have been differently worded.

No objection was made in the court below to any of the instructions given for the defendant, except to the fourth, fifth, and sixth. The sixth is free from objection. The others are not. The issue was whether the debt was "fraudulently contracted." That involved a wide range of investigation. If the defendant, as an inducement to the plaintiffs to send the goods ordered, promised to send a sight draft to pay for them, and, at the time, entertained the purpose not to send the draft as promised, the debt was fraudulently contracted. Both of these instructions omit this proposition, and the fourth announces that if the defendant believed, when he ordered the goods, that he would be able to pay for them as promised, he was acquitted of the charge of fraud. This narrowed the inquiry too much, and excluded the idea of intention, at the time of ordering the goods, not to pay for them as promised, which should have been left open to inquiry. Whether the plaintiffs might successfully have argued the existence of such a purpose on the part of the defendant or not, they should not have been barred from this line of attack. It is not true that the defendant must have known or had reason to believe that he could not pay for the goods as promised, as announced by the fifth instruction. He may have believed that he could, but if he did not intend to do it he was guilty of a fraud in obtaining the goods.

The seventh instruction for the defendant was not objected to, and we cannot consider it, but will consider, if the verdict assessing damages for wrongfully suing out the attachment is excessive, tried by that instruction, and upon the evidence introduced without objection; and we have no hesitation to say that it is grossly excessive, and should have been set aside. That instruction authorized the finding of damages for an attorney's fee, and actual damage to the business of defendant as a merchant, and for loss of credit occasioned to the defend-

ant by the attachment. We are to try the verdict by the evidence and instruction, conceding for this inquiry the admissibility of the evidence and the correctness of the instruction, neither of which was objected to.

It is manifest that the jury gave damages on the basis of holding the plaintiffs liable for all that happened to the defendant after the attachment sued out by the plaintiffs was levied. The instruction did not authorize this, but limited the jury to assessing such damages to business and to credit as the evidence showed " was done to the defendant by the attachment in this case." Such damages as this particular attachment, by itself, without regard to what others did, occasioned to the defendant, were authorized by the instruction. It is certain that the issuance of an attachment for three hundred and forty-nine dollars and fifty cents, and the seizure under it of goods to the value of six hundred and eleven dollars and forty-seven cents, did not injure the business and credit of the defendant to the extent of five thousand dollars or any approximate amount. The idea seems to have been that, in consequence of the issuance of this attachment, other creditors proceeded coercively against the defendant, and that the damage done by all of them was to be recovered from the plaintiffs, who made the first attack. This was not authorized by the instruction properly interpreted.

As this case will be remanded for a new trial, we will express some views suggested by it, and applicable to it, for the guidance of the court below on the question of the damages recoverable, on the trial of the issue, for the wrongful suing out of the attachment, if it shall be found to have been so issued.

As a rule, every one is liable for his own wrong, and not for that of another. A wrong-doer is responsible for the consequences produced by his own act, but not for what others, acting independently of him and for themselves, may do, even though his act may be the occasion of their doing what they do. That another independent agent, acting on his own responsibility, does something, because one has done a particular thing, does not make such one responsible for the act of the other. They are independent actors, and each is answerable for his

own acts, because of the want of causal connection between the acts. Consecutive wrongs done by independent agents cannot be conjoined to increase or enlarge the responsibility of one of them. If others attach or levy executions, after another, and because he has attached, they are responsible severally for what they do, and the first attaching creditor is not responsible for any injury occasioned by the acts of the others, although they merely followed his example. He must answer for his own wrong, and respond in damages, as assessed by the jury, for all " actual damages, if any, which the issuance of such attachment has occasioned" the defendant. By "actual damages" we understand to be meant those actually sustained, as the direct result of the wrongful attachment, and certainly traceable to it as a cause, and not such as are uncertain, contingent, speculative and conjectural, or the result of the act of another person responsible for his own wrong.

The Code of 1857 provided for the assessing, by the jury, for wrongfully suing out an attachment of " the damages against the plaintiff." Code 1857, 377, art. 14. The Code of 1871, § 1462, authorized the defendant, on the trial of such issue, to give evidence of " all damage he has sustained, including lawyer's fees, travelling expenses, hotel bills, loss of trade and special injury to his business." The Code of 1880, § 2430, provides for the assessing of " *actual damages* " occasioned to the defendant by the attachment. In *Fleming* v. *Bailey*, 44 Miss. 132, which was tried under the Code of 1857, it was said by the court that in trying the issue the jury had " as large a scope to consider and estimate the damages, as in a suit on the attachment bond." In *Myers* v. *Farrell*, 47 Miss. 281, under the Code of 1871, the court, after suggesting that the Code of 1871 enlarged " the elements of damages," by allowing " loss of trade and special injury to business " to be taken into account, declared that it did not " think that the legislature meant that so wide a latitude should be given as to compute losses of profits in trade so speculative and remote, and so incapable of probable certainty, as may have been allowed in " that case. In the opinion, the court propounds this question : " If the storehouse of a retail merchant is closed up by an improvidently issued attachment, must the jury go into a cal-

culation of profits which the trader may make, which are contingent and uncertain, often more plausible upon paper than are actually realized?" but does not specifically answer it. In *Roach* v. *Brannon*, 57 Miss. 490, decided with reference to the Code of 1871, it was held that "The allowance of damages for the wrongful issuance of an attachment . . . must be compensatory only," and a verdict assessing damages at six hundred and forty dollars for the wrongful issuance of an attachment for four hundred and thirty-four dollars was set aside as being excessive. It is evident that the Code of 1880, in providing for the allowance of the "actual damages" occasioned to the defendant by the wrongful attachment, did not enlarge, if it did not restrict, the scope of inquiry into the damages resulting from the attachment. In view of the construction placed on the former law, it must be held to have been designed to limit rather than extend the damages allowable in such cases, and to exclude all but compensatory damages caused by the issuance of the attachment.

According to the utterance quoted above from the opinion in *Fleming* v. *Bailey*, 44 Miss. 132, such damages are allowable in this issue, as would be recoverable in an action on the attachment bond. With respect to this, Drake on Attachment, § 175, asks, "What is this actual damage?" and answers, "On general principles it must be the natural, proximate, legal result or consequence of the wrongful act. Remote or speculative damages, resulting from injuries to credit, business, character, or feelings, cannot be recovered." It is further said, in the same connection, "Actual damage may be properly comprehended under two heads: 1. Expense and losses incurred by the party in making his defence to the attachment proceedings; and 2. The loss occasioned by his being deprived of the use of his property during the pendency of the attachment, or by an illegal sale of it, or by injury thereto, or loss or destruction thereof. For losses and trouble of these descriptions, the attachment defendant should be liberally remunerated." The text quoted is sustained by many cases.

We have no doubt that it is proper to allow the damages proved to have arisen from a loss of business with respect to the goods seized under the attachment; that is, in so far as

the seizure of goods under the attachment suspended business and caused loss as to those goods, it may be a factor in the computation of damages, if shown as a matter of fact, and not as the mere opinion or estimate of witnesses, as held in *Alexander* v. *Jacoby*, 23 Ohio St. 358.

Without undertaking to enumerate all of the elements for the allowance of damages in the trial of issues for the wrongful issuance of attachments, and contenting ourselves with what we have said, as sufficient for this case, we reverse the judgment, set aside the verdict, and remand the cause for a new trial.                    *Reversed and remanded.*