## ALLITH-PROUTY CO. v. WALLACE*
(No. 1188; February 17, 1925; 233 Pac. 144)
(Rehearing Denied; 234 Pac. 504)

PRINCIPAL AND AGENT—CORPORATIONS—ATTACHMENT — ATTORNEY'S FEES—DAMAGES—NEW TRIAL—STIPULATION AS TO EXPENSES—EXPENSES—APPEAL AND ERROR.

1. As bearing on question whether sale of corporate stock included declared dividend, consisting of additional shares of stock not yet delivered, fact that power of attorney to seller's agent specified by number the original shares, did not limit authority of agent where power of attorney was given only for purpose of effecting transfer on books of corporation.

2. Evidence held to disclose intent to include declared dividend, consisting of additional shares of stock not yet delivered, in sale of corporate stock, though no express mention of dividend was made at sale.

3. Attachment is wrongfully issued, though one of statutory grounds exists, where no indebtedness of defendant to plaintiff exists.

4. One against whom attachment has been wrongfully issued, is entitled to reasonable counsel fees incurred in defending against such attachment.

5. Damages for wrongful attachment are no different whether action to recover them be upon bond, common-law action for wrongful attachment, or by way of counterclaim.

6. Where jurisdiction in cause is gained by attachment on ground of nonresidence, and it is necessary to defend case on its merits to determine whether attachment was wrongful, attorneys' fees for procuring dissolution of wrongful attachment include those for contesting merits.

7. Where granting of plaintiff's motion to reopen and retry case was conditioned on deposit of sum for expenses of defendant in further trial, allowance for expenses of husband of defendant was proper, where it was contemplated that he would represent wife.

8. Error, in setting aside judgment for plaintiff, if any occurred, was cured where subsequently and on plaintiff's motion case was reopened and full trial had.

ON PETITION FOR REHEARING

9.  Failure to object at trial or in briefs on original hearing on appeal to nonjoinder of certain parties, and absence of proper issues precluded consideration of such objection on petition for rehearing.

10.  Generally, cash dividend, declared prior to transfer of ownership of stock, belongs to transferor, in absence of agreement to contrary.

11.  Ordinarily, dividend declared in stock is deemed capital, and not income.

12.  Declaration by corporation of stock dividend does not change interest of stockholders.

*NOTE—See Headnotes—(1) 2 C. J. p. 596; 3 C. J. p. 765; 4 C. J. pp. 629, 631, 642; (2) 14 C. J. p. 713; 14 C. J. p. 820; (3) 6 C. J. p. 74; 14 C. J. p. 812 (1926 Anno) (4) 6 C. J. p. 543; 14 C. J. p. 812 (1926 Anno) (5) 6 C. J. p. 534; (6) 6 C. J. p. 545; (7) 29 Cyc. p. 1016 (1926 Anno) (8) 4 C. J. p. 721.

APPEAL from District Court, Fremont County; CYRUS O. BROWN, Judge.

Action by the Allith-Prouty Company against Jennie V. Wallace in which defendant's property was attached. A default judgment in favor of plaintiff was subsequently vacated and defendant filed an answer and cross-petition, upon which trial was had,resulting in judgment for defendant. A new trial was granted below, on the conclusion of which the Court again found judgment in favor of defendant, from which judgment plaintiff appeals.

*Joel F. Longenecker* and *Edward A. Biggs* for appellant.

The procedure for opening judgment on service by publication is prescribed by 5924 C. S., but not complied with here; the finding for respondent that attachment was wrongfully obtained was erroneous; the Court erred in finding that respondent did not assign the dividend stock; that the dividends had not been paid to respondent; that the dividend stock belonged to respondent, and its value; and in finding that by reason of the attachment respondent had suffered damages for attorney's fees, 15 C. J. 114; Barquin v. Hall Co. 28 Wyo. 164; McArthur v. Co. (Cal.) 179

Pac. 700; Alonzo v. Maine, 19 P. R. 32; N. Y. C. v. Bank Miss. 195 Fed. 456, 7 R. C. L. 797. The Court erred in its findings of fact which are not sustained by evidence, nor is the judgment; The Court erred in permitting an amendment to respondent's cross-petition, 5707 C. S.; the action was barred; Smith Ill. Stat. 1921 Chap. 83, Sec. 16; a new cause of action cannot be introduced by amendment, 21 R. C. L. 580; amendments must not be prejudicial to opposite party, 31 Cyc. 360; Anderson v. Rucker Bros. (Wash.), 183 Pac. 74; Grier Bros. v. Co., 183 Pac. 334, 39 Atl. 10, nor include a new cause of action; Hodges v. McGovern, 230 Pac. 268; The Southwark, 128 Fed. 149; Mahoney v. Co., 217 Pac. 20; Wright v. Co., 206 Pac. 274; the Court erred in receiving the evidence as to dividends over defendant's objections, and as to attorney's fees, and in denying plaintiff's motion to strike certain of the evidence, 15 C. J. 298; Den v. Johnson, 13 N. J. L. 156; Melvin v. Whiting, 13 Pick 184; Kingfield v. Lullen, 54 Me. 398; Matoon v. Matoon, 42 (Vt.) 450; Woodward v. R. R. Co., 185 N. W. 978; the evidence does not support the findings upon which the judgment is based.

*E. H. Fourt* for respondent.

The findings are so amply sustained that this Court will not disturb them. The attachment was wrongfully issued, authorizing recovery of attorney's fees, 6 C. J. 543; Trapnell v. McAfee, 3 Met. 34; Leasure v. Hughes (Okla.) 178 Pac. 696; the owner of stock at time dividends are declared is entitled thereto; Hill v. Co., 8 Hun, 459; 10 Cyc. 556; 7 R. C. L. 271; officers permitting shares of stock to be transferred upon Company books without authority are liable to the holder, 7 R. C. L. page 271; property wrongfully transferred or stolen should be restored to the owner; West. Union Co. v. Davenport, 7 Otto 369; St. Romes v. Co., 127 U. S. 614; Geyser Co. v. Stark, 106 Fed. 558; Taft v. Co., 24 Pac. 436; Lanier v. Bank, 369; Ditch Co. v. Elliott, 15 Pac. 691; Jarvis v. Co., 43 N. E. 68; Herbert Co. v. Bank, 65 Pac. 143;

Cushman v. Co., 76 N. Y. 365; a certificate containing a guarantee of dividends requires payment of dividends earned; Boardman v. Ry. Co., 84 N. Y. 157; income accrued goes to the assignor of stock; City v. Ry. Co., 60, 490; Bright v. Lord, 51 Ind. 272; unless there be a reservation of dividends to the assignee; Clark v. Campbell (Utah) 65 Pac. 496; Hopper v. Sage, 20 N. E. 350; Von Allen v. Assessors, 3 Wallace, 573; Brundage v. Brundage, 60 N. Y. 544; Wheeler v. Co., 39 Fed. 347; Heit v. Heit, 93 Ky. 257.

*Joel F. Longenecker* and *Edward A. Briggs* in reply.

The stock was sold under a parole agreement; the power of attorney was a mere incident to complete the sale, 2 C. J. 449, 21 R. C. L. 819; the expressed power in the written instrument may be enlarged by parole to show original authority; Storey on Agency, 79 181; Hartford Co. v. Wilcox, 51 Ill. 182; Posmer v. Bayless, 59 Md. 56; McClanahan v. Breeding, 172 Ind. 460; Warner v. Brown, 231 Mass. 335; Marr v. Given, 23 Me. 55; Co. v. Bank, 6 Fed. 114; Isner v. Macomber, 25 U. S. 211; a corporation is not liable for refusing to register a transfer of stock, unless demanded by the holders and wrongfully refused; Cook on Corps., 8th Ed. page 1390; Fletch Cyc. Corp., pp. 6399-6402, 14 C. J. 764; the measure of damages is the value of the stock at the time of conversion, plus interest; Cook on Corps., 2057; Fletcher, p. 5668; 14 C. J. 771; the writ of attachment was not wrongfully obtained and the trial Court wrongfully awarded counsel fees to defendant. Counsel fees are not to be awarded for defending principal action, 6 C. J. 543-544, 2 R. C. L. 909.

BLUME, Justice.

This case was originally commenced in the district court of Fremont County on March 20, 1917, by the above named plaintiff, Allith-Prouty Company, a Corporation, appellant herein, against Jennie V. Wallace, defendant below and respondent here. The petition alleges that plaintiff is a corporation organized and existing under the laws of the state

of Illinois and is the successor of the Allith Manufacturing Company, which latter corporation was duly dissolved about the first day of January, 1913, and absorbed into and by the plaintiff company. That the defendant was the owner of sixty shares of the capital stock of said Allith Manufacturing Company, of the par value of $100, making a total valuation of $6000. That on March 25, 1911, a motion was duly made and carried whereby the board of directors of said Allith-Manufacturing Company declared a dividend of 100%, making a total amount of $6000 declared for the defendant. That thereafter, on the first day of April, said dividend was paid to said stockholders of said corporation, of which $6000 was paid to the defendant. That said dividend was paid in the form of an additional issue of capital stock in the Allith Manufacturing Company, so that the defendant received sixty additional shares, making a total of one hundred and twenty shares of stock held by her. That thereafter, on or about April 1, 1915, it was discovered that an error in calculation had been made by the board of directors of said Allith Manufacturing Company, in declaring said 100% dividend, making it necessary for the board of directors of said plaintiff company to cancel and annul the said former dividend to the extent of forty percent on each share of the stock, leaving the amount that had been correctly paid as dividend only sixty percent thereof. That on account of said error it became necessary to order a refund to the corporation of forty percent of the stock so issued as dividend, which was accordingly done, and that all of the stockholders of said corporation, with the exception of defendant and her husband, made such refund. That a demand for such refund had been made upon defendant, but that she has refused to make the same and that there is due to plaintiff by reason thereof the sum of $2400 and interest.

The defendant was a non-resident of the state of Wyoming at the time of the commencement of the action, and jurisdiction in the case was obtained by an attachment is-

sued in said cause, an affidavit having been duly filed that the defendant was a non-resident of the state of Wyoming. Certain property in the town of Lander was attached. The only notice of said action served upon the defendant was by publication, as by law provided, although a copy of the notice did not reach the defendant. The case was tried in the absence of the defendant, and a judgment was rendered therein on December 8, 1917, in favor of the plaintiff for $3686.93 and costs. An execution was duly issued and the property in the city of Lander attached in the case was duly sold to H. C. Smith for the benefit of the plaintiff herein, which sale was subsequently, on June 16, 1919, duly confirmed by the court.

On August 23, 1919, the defendant herein served notice upon the plaintiff of an intended application to re-open, vacate and set aside the foregoing judgment and orders of the court. An application to that effect was filed on September 3, 1919, and an order was entered in said court on September 29, 1919, granting the application and authorizing the defendant to appear and defend. On the same day, the defendant filed an answer and cross-petition in said case, denying the allegations of the plaintiff's petition and asking damages by way of counter-claim for the wrongful attachment issued in said cause, and also a judgment for the value of the stock dividend heretofore mentioned but not turned over to the defendant.

Said cause came on for hearing before said court on December 8, 1922, and the court found in favor of the defendant and against the plaintiff and appellant, and rendered judgment in favor of said defendant and respondent in the sum of $9304.00 and costs. On December 18th, 1922, said plaintiff filed a motion for a new trial and to have said cause re-opened, which said motion was granted on January 3, 1923, upon certain conditions hereinafter mentioned. Said cause came on again for trial on February 21, 1923, before the court without a jury, at the close of which the court again found in favor of said defendant and against the

plaintiff, and rendered judgment for the defendant in the sum of $10,732.00 and costs. From this judgment the plaintiff has appealed to this court. The parties will herein be referred to in the same manner as in the court below.

1. The undisputed testimony shows that defendant owned sixty shares in the Allith Manufacturing Company at the time that the stock dividend above referred to was declared. That was on March 25, 1911. The motion to declare said dividend was made by Wm. A. Wallace, husband of defendant, who was a director in said company, and who himself owned six shares of stock therein. The dividend stock was, however, never delivered to the defendant. During the year 1911, the plaintiff company took over the property and assets of the Allith Manufacturing Company. About the beginning of the year 1912 negotiations began between H. C. Smith, president of the consolidated company, and Wm. A. Wallace for the purchase of the stock held by the latter and his wife, and the sale of the stock, namely, sixty-six shares of the Allith Manufacturing Company was soon thereafter actually effected, being made to Charles C. Linthicum for $13,200, or $200 per share. Linthicum caused the stock to be transferred to him on the books of the company, and the dividend stock heretofore mentioned, which otherwise would or should have been issued to defendant and her husband, was issued to said Linthicum by reason of the purchase aforesaid.

The trial court included in the judgment in the case at bar the sum of $3600 for 60% of the $6000 dividend stock not issued to defendant, but issued, as stated, to Linthicum instead, and also included in said judgment the sum of $1470 for dividends earned thereon to the time of the trial, making a total of $5070 so included by reason of said dividend stock. This amount was evidently allowed upon the theory that the plaintiff converted this stock, although no such issue was raised by the pleadings. Waiving that point, however, we must examine whether or not the evidence in the record justified the finding. H. C. Smith testified that

when the sale to Linthicum of the sixty shares of defendant and the six shares of Wm. A. Wallace was made, the defendant sold all of her interest in the Allith Manufacturing Company, including the 100% dividend that had been declared. The trial court held that this dividend was not included in the sale and was doubtless led to this conclusion largely by reason of what it conceived to be the limited authority of the power of attorney given by defendant to her husband William A. Wallace. That instrument is in the usual form and gives power to "assign and transfer the following shares of the capital stock of the Allith Manufacturing Company, to-wit: (here specifying Nos. 184-189 both inclusive) to Charles C. Linthicum of Chicago, Illinois, at such prices and on such terms as my said attorney may determine" etc. We do not, however, think that the authority of Wm. A. Wallace should be necessarily limited by the power of attorney, for the reason that it is clear that it was given not for the purpose of negotiating the sale of the stock but simply for the purpose of properly effecting the transfer of the stock on the books of the corporation. This appears clearly from the testimony of Mr. Wallace as follows:

"Mr. Smith began negotiating to buy my stock, and my wife's, sometime prior to this, and finally he offered me a price of $200 a share. I advised my wife to take it and accepted his offer. He came to me and told me he was ready to close the deal and took me up to Mr. Linthicum's office and left me standing in the anteroom while he went and talked to Mr. Linthicum. Finally he motioned for me to come in. I went in. While Mr. Linthicum was making out his check, he says, 'I think I ought to have a power of attorney for Mrs. Wallace.' I says, 'All right.' They made out the power of attorney and there was nothing further said. I figured that they knew more about the affairs of the company than I did and I made no further comment."

What, then, was the actual authority of Mr. Wallace, and what was the intention when the sale was made? Unfortunately, Mr. Linthicum is dead and his version of the transaction was not available. Without going into the details of the testimony of Mrs. Wallace, we think that it clearly appears therefrom that she relied exclusively upon her husband and left the whole transaction unconditionally and unqualifiedly to him and that he had ample authority to do whatever he thought advisable in order to effect the transfer of her interest in the Allith Manufacturing Company. It further appears from her testimony that she and her husband were moving away from Illinois to California. "Well," she testified, "We were going away and we sold our stock, that's all I know about it—we were going to California and we sold the stock. * * * We were settling our affairs and we sold everything we had." Hence it is clearly apparent that there was no thought in her mind that she was retaining any interest in said corporation. Mr. Wallace, it is true, denied that he transacted any business for his wife other than the sale of the shares of stock. It is accordingly contended by counsel for defendant that a conflict of evidence appears which this court will not review. The conflict is, however, more apparent than real. Mr. Wallace, when asked if he was still a stockholder in the corporation, answered: "No, sir. * * * I sold all the common stock I had. * * * I didn't want to act (as director) after I sold my common stock." He had some preferred stock and also sold that, bearing out the testimony of Mrs. Wallace that she and her husband were selling out everything in order to move to California. He further testified that the stock which he sold was worth $200 per share, and that this value was based upon the "earnings, dividends, and market price." The only dividend referred to was the dividend of 100% here in dispute. By this testimony he corroborated E. A. Biggs, who also testified that $200 was the value of the stock, inclusive of the dividend of 100%. The price for which the stock was in fact sold was $200 per

share, and shows conclusively that the dividend of 100% was intended to be included in fixing the price. This con-- clusion is also borne out by the fact that while, as stated, Mr. Wallace himself made the motion to have the dividend of 100% declared, neither he nor his wife, for a period of some eight or nine years, ever made any inquiry in regard to it or demanded that any stock be issued to them. The most that can be made out of the testimony of Mr. Wallace is when he testified that "the dividend stock was never mentioned at any time in the negotiations for this stock." Even if that were true, it is perfectly apparent that the price fixed and paid for the stock included payment for such "dividend stock" and the inclusion of the latter in the sale was clearly in the minds of the parties during the transaction. In view of that fact the absence of an express mention thereof cannot be made the basis of perpetrating an injustice. The judgment of the trial court cannot, accordingly, be upheld on this point.

2.    The court also allowed the sum of $3600 for the value of the property sold under the attachment, and the interest thereon from the time of the sale. The authorities are conflicting as to whether or not a counterclaim could have properly been filed in the main action for the purpose of recovery of damages. 6 C. J. 505, 506. But no objection to the procedure was made in the court below, nor is it made here, and we cannot consider that point, and hence the question as to whether or not the items above mentioned were rightly allowed depends on whether or not the attachment was properly or improperly issued. The answer thereto does not, of course, as seems to be contended, depend solely on whether it is true or not that the defendant was a nonresident of the State of Wyoming. In addition to the statutory grounds authorizing an attachment, or rather as a necessary basis for it, there must be an indebtedness. Without such indebtedness there can be no rightful attachment. 6 C. J. 500; McGill v. W. P. Fuller Co., 45 Wash. 615; 88 P. 1038; Ames v. Chirurg, 152 Iowa, 278, 132 N. E. 427; 38

L. R. A. N. S. 120; Comer v. Powell (Tex. Civ. App.) 189 S. W. 88. The court found, in the case at bar, that no such indebtedness owing from defendant to plaintiff existed. We have looked in vain through the briefs of counsel for plaintiff for any theory under which Mrs. Wallace is thought to be legally indebted to plaintiff in the action brought against her. The petition alleges that a dividend of $6000 was paid to defendant. But there is no proof of that allegation. On the contrary, it clearly appears that the dividend so referred to was paid to Linthicum and not to Mrs. Wallace. We cannot see how an overpayment made by the plaintiff to the former could be recovered from the latter. It follows accordingly that the attachment was issued wrongfully and that the foregoing items were properly allowed by the court.

3. The court also allowed as damages to defendant the sum of $1000 for attorneys' fees. The only contention made is that the amount was allowed for contesting the merits of the case and not for having the attachment dissolved; that this cannot lawfully be done, and that hence no part of the fees should have been allowed. The evidence in the case is not altogther specific or clear for just what services the fee was claimed or allowed, but inasmuch as it is not contended that the amount is excessive, if any was properly allowed, we need but to inquire as to whether or not any attorney fee may be recovered in a case of this kind at all. Some authorities hold that such fees may not be recovered in an action for wrongful attachment, unless the bond or the statute specifically provide therefor, because the incurrence thereof is not the natural and direct consequence of the attachment. 6 C. J. 543. We do not, however, perceive the force of such reasoning. It is practically impossible, or at least exceedingly difficult, for a person to protect his legal rights in this commercial age without the employment of an attorney. It is only in rare instances that such assistance is not sought. This is a fact known to everyone, and every attaching creditor realizes when he pro-

cures a writ of attachment to be issued, that the defendant must and will incur the expense of attorneys' fees, if any defense exists to the action or to the grounds of the attachment. An attachment writ is an extraordinary process, often causes great damages, and is designed, ordinarily, for the purpose of being used sparingly only. Hence it is the general rule, based, we think, upon the sounder reasoning, that one against whom an attachment has been wrongfully sued out is entitled to recover reasonable counsel fees incurred or expended in defending against such attachment. 6 C. J. 543. Generally the actions for the recovery of such fees have been upon the attachment bond which usually provides, as is required of the bond mentioned in section 6119, W. C. S. 1920, that the plaintiff will pay all damages which the defendant may sustain by reason of the wrongful attachment. The "damages" however, sustained, would seem to be no different whether the action to recover them be upon the bond or in a common law action for wrongful attachment or by way of counterclaim. Fleming v. Bailey, 44 Miss. 132; Marqueze v. Sontheimer, 59 Miss. 430; Dunlap v. Fox (Miss.) 2 So. 169; Selz v. Belden, 48 Iowa 451. The allowance for attorneys' fees should, of course, generally be limited to fees for services in connection with the dissolution of the attachment itself, and no allowance should be made for fees for services in defending the principal action. 6 C. J. 544. But in the case at bar jurisdiction in the case was only obtained by the attachment. The ground alleged therefor was that the defendant was a non-resident. This was true, and the only way by which the defendant was enabled to have the attachment dissolved was by defending the whole case upon its merits and thus showing that the plaintiff had no cause of action. There is a difference of opinion among the courts as to whether or not attorneys fees are recoverable under such a state of facts. It is held by some of them that where it is impossible to differentiate between the attorney's services for dissolving the attachment and those for defending the suit, such attor-

neys' fees should not be allowed, for to do so would be to allow the fees virtually for defending the suit on the merits. Fariss v. Swift (La.) 99 So. 893; Three Rivers Oil Co. v. Laurence, 153 La. 224, 95 So. 652; Vannatta v. Vannatta, 55 S. W. 685, 21 Ky. L. Rep. 1464; Frost v. Jordan, 37 Minn. 544; 36 N. W. 713; See Ames v. Chirurg, 152 Iowa, 278, 132 N. W. 427, 38 L. R. A. N. S. 120. Other cases, however, take the contrary view. Moseby v. Fidelity & Dep. Co., 33 Idaho 37 189 Pac. 862; 25 A. L. R. 564; Buckley v. Van Diver, 70 Miss. 622, 12 So. 905; State v. Yount, 186 Mo. App. 258; 172 S. W. 431; State v. McHale, 16 Mo. App. 478; Straschitz v. Ungar, 153 N. Y. S. 118; Balinsky v. Gross, 72 Misc. Rep. 7, 128 N. Y. S. 1062; Tyng v. American Surety Co., 69 App. Div. 137, 74 N. Y. S. 502. The point involved is governed, we think, by the case of Littleton et al. v. Burgess, 16 Wyo. 58, 91 Pac. 832, 16 L. R. A. (N. S.) 49 where it was held that attorneys' fees incurred in procuring the dissolution of a temporary writ of injunction are recoverable in an action on the bond where an injunction is the object of the suit. In such a case it is necessary to defend the action upon its merits in order to procure the dissolution of the writ in like manner as in the case at bar, and it would seem that the holding should be the same in both cases. We are, therefore, constrained to hold that the trial court committed no error in allowing the foregoing item.

4. After a judgment had been rendered against the plaintiff and in favor of defendant on December 8, 1922, subsequent to the first reopening of the case, the plaintiff moved to have the case reopened and to have a new trial granted. This motion was granted on January 3, 1923, upon condition that the plaintiff deposit the sum of $500 for the purpose of paying the expenses to be incurred by defendant in the further trial of the cause. The plaintiff made no objection to said condition and deposited said money as directed. It was not shown that defendant personally incurred any such expenses, but William A. Wal-

lace, her husband, testified that his expenses in attending
the trial amounted to over $400. The court allowed him the
sum of $295 out of said deposit of $500 for such expenses.
The plaintiff complains of this, claiming that only the ex-
penses of defendant herself and not those of her husband
were contemplated in the foregoing order. We do not think
the objection well taken. It is apparent that William A.
Wallace acted as defendant's agent, and represented her at
the trial. The judge who made said order, and who also
tried this case, stated during the trial, when Wm. A. Wal-
lace testified to his expenses, that plaintiff had agreed to
pay the former's expenses; or in other words that it was
contemplated at the time said order was made that Wm. A.
Wallace would represent defendant. We think that the
latter's expenses should, under the circumstances, be con-
sidered as the expenses of defendant.

This disposes of all the errors assigned except that which
complains of setting aside the original judgment in favor
of plaintiff. We do not think that the court erred in that
regard. It is a sufficient answer to say that when plaintiff
itself moved on December 18, 1922 to have the case reopened
and have it tried anew, and when that motion was granted
and a full trial had thereafter, whatever error in that re-
spect might have been committed previously was cured. It
is accordingly ordered that this case be and the same is
hereby  remanded to the district court with directions to
reduce the judgment herein entered from the sum of $10,-
732.00 to the sum of $5662.00, as of date February 24,
1923, and that the judgment as so modified be and the same
is hereby affirmed. The costs in this court will be equally
divided between the parties hereto.

*Modified and Affirmed.*

POTTER, Ch. J., and RINER, District Judge, concur.

BLUME, Justice.

Counsel for Jennie V. Wallace, respondent herein, has filed a petition for a rehearing on the ground, among other things, that "the plaintiff below stated no cause of action in its petition." Other grounds are set up, apparently intended to state the same thing in different language. We held in the original opinion that the plaintiff, the appellant herein, had not proven the allegations in its petition, and by reason of that fact, the judgment of the lower court was sustained in so far as it had any relation thereto; respondent has all that she asked for in that respect, and we are at a total loss to know why the grounds for rehearing above mentioned and others of like import are set up. Upon examining the brief filed with the petition for rehearing, however, we find the contention made that the appellant, not being a party to the contract with Linthicum, could not base any defense thereon; that in any event an affirmative plea of payment should have been set up, and the heirs of Linthicum should have been made parties to the suit. We fail, however, to find any such objection in the briefs of counsel filed in this court upon the original hearing of this case. No such objection was at any time raised at the trial; the case was tried upon the theory that the proper issues were raised and the proper parties before the court, and the objection now made comes too late. 4 C. J. 629, 631. We might insert the query, however, if it is true that a corporation cannot, in a suit brought by a former stockholder to recover a dividend on stock, defend on the ground that pursuant to a contract between the stockholder and a third party the dividend or stock was transferred, and that the payment or delivery was made accordingly, how a corporation could ever set up any defense of such transfer even though made in writing, duly filed with the company? It would seem that in so far as the right of setting up such defense is concerned, it would make no difference whether such transfer is made in writing or orally. In Wheeler v.

Sleigh Co., 39 Fed. 347, cited to us, the very defense now mentioned was set up; in fact the transfer of a dividend was claimed to have been made orally, through an agent. The case was decided upon the ground that no such contract was shown, but there was no intimation that the defense was not a proper one.

On March 25, 1911, the Allith-Manufacturing Company declared a dividend. This dividend—a point not perhaps clearly stated in the original opinion—was a stock dividend. The point tried in the lower court was as to whether this stock dividend was transferred along with and as a part of the stock then—in January, 1912—held by respondent in the company. The sale was made by an agent, the husband of respondent. The transfer of the stock was effected through a written power of attorney, but, as shown in the original opinion, such power of attorney was a mere incidence in the transaction, was made merely to effect the transfer on the books of the company, and in no manner measures the power of the agent. But it is urged by counsel that "this novel idea of a transfer of a dividend by parol" ought not to prevail; that it would invite the most flagrant abuses in dealing with corporate stock," and would make Wyoming "the Mecca of the stock-swindlers, the looters of the mails and safety-deposit boxes." But we fear no such results. The case does not involve the ordinary sale of dividends, but the question as to whether, under the facts and circumstances of this case, a stock dividend, passed as an incident to the sale of stock. As already stated in the very case cited by counsel, that of Wheeler v. Sleigh Co., supra, the defense set up was an oral transfer of a dividend as incident to the sale of stock, without intimation on the part of the court of any terrible consequences that might ensue if proof of such transfer should be made. In Brewster v. Lathrop, 15 Cal. 21, a transfer of stock was made "with all the dividends made after the morning of the twenty-third of September." A dividend was declared on the afternoon of that day. Both parties had expected a divi-

dend to be declared on September 22nd, and it was held
that it could be shown by oral evidence that the dividend
was not in fact transferred, notwithstanding the express
language in the written contract to the contrary. In Cook
v. Monroe, 45 Neb. 349, the court said:

"A stockholder may sell or transfer his shares of stock
with or without gains or accrued dividends, and a dividend
which has been declared may be made the subject of a con-
tract, or a contract may be entered into regarding it, in the
same manner and to the same extent, and as valid and bind-
ing as one in reference to any other kind of personal prop-
erty."

See also 14 C. J. 820; Fletcher, Cyc. of Corporations, Sec.
3703.

Counsel claim that we have overlooked the rule hereto-
fore many times stated by the court that we will not dis-
turb the finding of the trial court where the evidence is con-
flicting. The original opinion, however, shows that we had
that principle in mind. This is not a case where the evi-
dence is conflicting. All of it, including the testimony on
behalf of respondent, unerringly and irresistably leads to
the only possible conclusion that the stock·dividend was con-
sidered an incident to, and a part of, the stock transferred.
Even if this were not true, there would still be grave doubt
that a respondent could recover on this item. It is no doubt
true, as a general rule, that in the absence of an agreement
to the contrary, a cash dividend declared prior to the trans-
fer of ownership belongs to the transferor. 14 C. J. 820.
But we are not at present prepared to hold that this is true
in case of a stock dividend, previously declared, but not in
fact issued or at least in some manner specially set apart
to the stockholders. Ordinarily a dividend declared in
stock is to be deemed capital and not income. The interest
of stockholders in a corporation remains unchanged upon
the latter declaring a stock dividend. Gibbons v. Mahon,
136 U. S. 558; De Koven v. Alsop, 205 Ill. 309, 66 L. R. A.

587; Lancaster v. Trust Co., 152 N. C. 660; Kaufman v. Charlottesville Woolen Mills, 93 Va. 673, 25 S. E. 1003. If then a stock dividend is declared, but not issued, what is it that represents such capital of the corporation? Is it not, necessarily, at least in the absence of special circumstances, the stock actually issued and outstanding? And if that is so, would not a transfer of such stock carry with it, in the absence of an agreement, everything actually represented by it? In Lancaster v. Trust Co., supra, the parties did not know that a stock dividend had been declared. A special agreement was made upon transfer of stock, reserving "January dividends." It was held that notwithstanding such agreement, a "January stock-dividend" previously declared belonged to the vendee of the stock. In Kaufman v. Woolen Mills, supra, the seller reserved "dividends" to be declared in January subsequent to the transfer. It was held that a stock-dividend declared in that month belonged, nevertheless, to the vendee of such stock. In Gibbons v. Mahon, and De Koven v. Alsop, supra, it was held that as between remainder-man and life tenant—the latter receiving the income from stock—a stock-dividend belongs to the former. In the City of Ohio v. R. Co., 6 O. St. 490, the court appears to hold that a transfer of stock carries with it all "stock-dividends unpaid at the time of the transfer," except "where it is separate and set apart from the principal by actual payments or by being carried, when due, to the credit of the owner of the principal in his account with the debtor." We need not, however, decide this point, since the evidence, in our opinion, clearly and unmistakably shows that the stock-dividend was intended to be transferred along with the stock.

A rehearing must accordingly be denied.

*Rehearing Denied.*

POTTER, Ch. J., and RINER, District Judge, concur.