[No. 29952. Department Two. July 18, 1946.]

W. J. McJANNET, *Appellant*, v. STREHLOW SUPPLY COMPANY, *Respondent.*[1]

[1]Reported in 171 P. (2d) 173.

*Lloyd Holtz,* for appellant.

*Allen, Hilen, Froude & DeGarmo,* for respondent.

MILLARD, J.—Defendant, a dealer in metallic tubing and couplings used in connection therewith, was incorporated in 1934 under the laws of this state with an authorized capital of six thousand dollars, consisting of sixty shares of the par value of one hundred dollars a share. The only stockholders and trustees of the corporation were plaintiff (its president), who owned thirty-one shares of the capital stock; J. A. Strehlow (general manager and vice-president of the corporation), who owned twenty-four shares; and Paul L. Neves (secretary-treasurer of the corporation), who owned five shares of stock.

Plaintiff was the controlling stockholder of the corporation and as such was paid a monthly salary of one hundred fifty dollars by the corporation. Strehlow and Neves objected to that payment and quarreled frequently with plaintiff regarding the matter. Plaintiff could not be induced to sell his stock to the minority stockholders.

To solve the problem, the minority stockholders called a special meeting, which was attended by all of the stockholders, who were also trustees, August 2, 1944, of defendant's board of trustees. As the president—plaintiff—refused to preside, vice-president Strehlow acted as chairman of the meeting. Mr. Strehlow stated that, although the business success of the corporation was largely due to his efforts, he, as a minority stockholder of the corporation, as well as other of its employees, had not been and were not then commensurately compensated for their respective services. He suggested as a reason for such unsatisfactory condition

" . . . that the majority control of the corporation has always insisted on payments to themselves of salaries and bonuses as employees of the company even though no actual services were in fact performed for and on behalf of the company."

To illustrate his point, Strehlow called attention to the fact that plaintiff had drawn salary and bonus as distinguished from stock dividends in the sum of $8,720, although the only service performed by plaintiff for the corporation was "attendance of the annual stockholders' and trustees' meeting."

Mr. Strehlow expressed unwillingness to continue as vice-president and general manager of the corporation under such policy;

". . . that if he was to continue with the company he would henceforth insist that he be properly compensated for his services, and that also Mr. Neves should be more properly compensated for his services, as well as all other employees of the company; that he would not be a party to any agreement or authorization to pay Mr. McJannet or any other person a salary or bonus, regardless of the number of shares any such person should hold in the corporation, unless such person was performing bona fide services for the company and that it receive a fair return for any salary and bonuses so paid."

Thereupon a resolution, Strehlow and Neves voting in the affirmative and McJannet in the negative, was adopted setting the salaries of Strehlow and Neves, respectively, at seven hundred fifty dollars and five hundred dollars monthly, effective as of January 1, 1944, and that plaintiff be dropped as an employee of the corporation, any salary to him to be discontinued as of July 1, 1944.

A resolution, favored by Strehlow and Neves but opposed by plaintiff, was adopted declaring a stock dividend of one hundred fifty dollars a share, which resolution directed the vice-president and general manager and the secretary-treasurer to

". . . take such steps as they deem necessary or advisable with reference to the payment of the aforesaid dividends by issuance of notes or obligations of the corporation evidencing the same or in payment thereof."

A third resolution, passed by the same vote as the two resolutions described above, approved the action of Strehlow in permitting the lapsing of an insurance policy issued on his life and payable to defendant corporation, the premium on which was paid by defendant. Plaintiff objected to each of the three resolutions because "in his opinion it jeopardized the resources of the corporation."

Although Strehlow and Neves were minority stockholders, they were temporarily in control of the corporation's board of trustees. Following the special meeting of August 2, 1944, plaintiff, the controlling stockholder of the corporation, called a meeting of the stockholders to elect new trustees for the corporation; the purpose, doubtless, was to remove Strehlow and Neves as trustees and to restore to plaintiff that of which the trustees had deprived him.

August 16, 1944, which was prior to the called meeting of the stockholders, plaintiff went to defendant's place of business, at which time he entered into an oral agreement with Strehlow by the terms of which the latter was obligated to pay plaintiff ninety-five hundred dollars for plaintiff's thirty-one shares of capital stock of defendant corporation. It was further agreed that defendant would pay plaintiff four hundred fifty dollars in salary and also pay him $720.60 for a premium plaintiff had paid on policy of life insurance carried by defendant on Strehlow, which was the policy the board's resolution of August 2, 1944, permitted to lapse.

Plaintiff and Strehlow agreed, in which Neves concurred, that the minutes of the trustees' meeting of August 2, 1944, should be set aside. Plaintiff stated at that time, in response to Strehlow's suggestion that a corporate meeting be held for the purpose of rescinding the minutes, that such meeting was not necessary, as he had sold his shares of stock to Strehlow, was out of the company, and the stockholders could do whatever they desired to do.

Checks for salary of four hundred fifty dollars and $720.60 for life insurance premium were issued by defendant corporation to plaintiff, to whom Strehlow gave his personal

check in the amount of three thousand dollars as part payment of ninety-five hundred dollars for the thirty-one shares of stock sold by plaintiff to Strehlow. August 21, 1944, Strehlow paid the remainder of sixty-five hundred dollars to plaintiff, on which date plaintiff again stated, in reply to Strehlow's suggestion that a corporate meeting be called to rescind minutes of trustees' meeting of August 2, 1944, that such meeting was unnecessary, as plaintiff was no longer interested in the company; however, on that occasion plaintiff signed a formal resignation as an officer and trustee of the corporation. The following day (August 22, 1944), a special meeting of defendant's stockholders and trustees was held, and plaintiff's resignation was accepted. At that meeting, a formal resolution was adopted setting aside and rescinding the minutes of the trustees' meeting of August 2, 1944.

Plaintiff brought this action October 20, 1944, to recover dividends which defendant declared August 2, 1944, on its corporate stock. The corporation pleaded as an affirmative defense that the resolution declaring the dividend was rescinded by unanimous agreement of all of its stockholders, and that plaintiff sold all of his shares of capital stock of defendant corporation to another stockholder of defendant,

". . . which said sale included any and all rights of every kind or character which had theretofore accrued or might thereafter accrue with reference to the ownership of said stock."

The cause was tried to the court, which found the facts to be as recited above and concluded that the action should be dismissed. Judgment of dismissal was entered. Plaintiff appealed.

■ Appellant invokes the rule, which is conceded by respondent, that respondent's declaration, August 2, 1944, of a stock dividend created a debt from respondent corporation to each of its stockholders (appellant, Strehlow, and Neves) then holding stock. Appellant contends that, as the dividend was declared by competent authority, such declaration cannot be rescinded as against a nonassenting stock-

holder, for the reason that the relationship of debtor and creditor was created by the declaration.

Appellant further insists that the corporate meeting of August 22, 1944, at which the resolution was adopted revoking the dividend declaration of August 2, 1944, was held subsequent to the time he discontinued his status as a stockholder and trustee of the corporation; and that, if there were any agreement—he contends there was none—for cancellation of respondent's obligation to appellant, it had to be an agreement with appellant in his individual capacity.

The trial court did not, nor shall we, pass upon the question whether the declaration of dividend was illegal because payment of same would have rendered the corporation insolvent.

■ The declaration of the dividend by the trustees of respondent August 2, 1944, created a debt from respondent to each of its stockholders then holding stock of the corporation. The court's finding that the only stockholders and trustees of respondent (appellant, Strehlow, and Neves) mutually agreed, at the time of the purchase of appellant's shares of capital stock by Strehlow, that the dividend declaration of August 2, 1944, be set aside, is sustained by the evidence. It is not material, in view of that agreement, whether the declaration of the dividend created a debt which could not be revoked by respondent as against appellant without his consent. The agreement is the same as that of any three creditors of a corporation who enter into a compromise agreement relative to the third person debtor.

There were only three stockholders—appellant, Strehlow, and Neves—all of whom were creditors of respondent corporation. They agreed as between themselves to the satisfaction and discharge of the dividend obligation of the corporation. That agreement was ratified by the corporation by formal resolution passed at a meeting of the stockholders and trustees of the corporation August 22, 1944. Not only is there a reasonable inference that the transaction was for the benefit of the debtor (respondent corporation)

and with its consent, but there was, as stated above, a ratification by the corporation of the agreement.

"It may be laid down as incontestable, as a general thing, that, where one man is indebted to another, and a third person steps in and pays the debt, in the absence of all circumstances tending to show the contrary, the rational inference would be, that the act done, being for the debtor's benefit, was done *with his consent,* or, if without his knowledge at the time, that it would, as a matter of course, *be ratified* by him afterward. If, in such a case, the creditor should subsequently bring suit against the debtor, and the debtor should appear in the action, and *plead the satisfaction in discharge of his liability,* I can not conceive upon what just and rational ground the creditor could be allowed to reply, that his debt was not discharged, because the satisfaction which he had accepted in discharge of it was *without the consent of the defendant.* The very fact of the satisfaction being set up in the action, by the defendant, in discharge of the debt, would, of itself, seem sufficient to conclude the plaintiff from denying that it had received the defendant's consent, or ratification." *Leavitt v. Morrow,* 6 Ohio St. 71, 67 Am. Dec. 334.

While appellant may not have made any mention of the dividends as passing to Strehlow when the latter purchased the shares of stock of the former, it is clear that the price paid for the shares of stock must have included the dividends. The price paid to appellant for his stock was in excess of three hundred dollars a share. When the dividend is considered, as it should be, an obligation of the corporation, the book value of the stock would have been slightly more than one hundred dollars a share. The not too satisfactory financial condition of the corporation was well known to appellant, who was also aware of the fact that Mr. Strehlow intended to sell his interests in the corporation unless appellant disposed of his shares of stock in that corporation. Appellant also admitted that he knew that, if Mr. Strehlow left the corporation, there was no one sufficiently familiar with it to successfully carry on the business of the corporation.

Clearly, even if the dividends are, as appellant contends, cash dividends, and there was no agreement when

appellant sold his shares of stock to Strehlow that the resolution of August 2, 1944, be rescinded, appellant is not entitled to the dividends; they are not payable to him.

In *Allith-Prouty Co. v. Wallace*, 32 Wyo. 392, 233 Pac. 144, 234 Pac. 504, 39 A. L. R. 513, the right as between vendor and vendee to a dividend declared prior to the transfer of corporate stock was involved. Evidence was introduced as to the actual value of the stock as determined by the records of the corporation. The court held that, although a declared stock dividend is not mentioned in negotiations for stock entitled to it, it will pass with such stock if the price fixed and paid included such dividend, and its inclusion is clearly in the minds of the parties to the transaction. The court said:

"The most that can be made out of the testimony of Mr. Wallace is when he testified that 'the dividend stock was never mentioned at any time in the negotiations for this stock.' Even if that were true, it is perfectly apparent that the price fixed and paid for the stock included payment for such 'dividend stock,' and the inclusion of the latter in the sale was clearly in the minds of the parties during the transaction. In view of that fact the absence of an express mention thereof cannot be made the basis of perpetrating an injustice."

The next contention of appellant that there was no consideration for his asserted release of the corporation's obligation to him, is without substantial merit. The mutual agreement alone of the three stockholders was a sufficient consideration to support the release.

Over objection, the trial court permitted respondent's then attorney to testify concerning a telephone conversation between himself and the officers and directors of respondent corporation. That is assigned as error. Conceding the correctness of appellant's position, the admission of the improper testimony did not constitute reversible error. This action was tried to the court, and, as the judgment is supported by other sufficient, competent evidence,

the admission of the evidence of which appellant complains was harmless.

The judgment is affirmed.

BEALS, C. J., BLAKE, ROBINSON, and JEFFERS, JJ., concur.

---

September 5, 1946. Petition for rehearing denied.