OVERTON, J.
Plaintiff employed defendant to manage the Bynum plantation, situated in the parish of Grant, the employment to begin on December 17, 1918. Defendant acted as manager until April 17, 1920, on which date the contract was terminated, and the following compromise and settlement entered into between the.parties, to wit:
“This agreement, made and entered into between the Three Rivers Oil Company, a Delaware corporation,- herein represented by F. T. Wall, secretary and treasurer, party of the first part, and F. A. Laurence, a resident of Grant parish, Louisiana, party of the second part, witnesseth:
“That whereas, party of the second part has been employed by party of the first part as manager of their certain properties in Grant parish, Louisiana, known as the Bynum plantation, for the period beginning December 17, 1918, and it is now mutually agreed that this arrangement be dissolved and full and complete settlement made and all prior contracts abrogated and canceled.
“The consideration of this contract is the sum of eighteen hundred 00/100 ($1,800.00) dollars paid and payable as follows, viz.:
“Eight hundred and 00/100 ($800.00) dollars cash in hand paid by party of the first part to-party of the second part, the receipt of which is hereby acknowledged, and the deposit of one thousand and 00/100 ($1,000.00) dollars in the bank of Colfax, Colfax, Louisiana, to be paid by the said bank to party of the second part whenever he vacates the premises now occupied by him on said Bynum plantation, wideh shall be on or before June 5, 1920, and the further consideration of the following property now sold and transferred by party of the first part to party of the second part, viz.:
“One jack; the bees and bee supplies; a cow and two calves and certain notes held by party of the second part for stock sold by him from the; Bynum plantation.
■ “In consideration of said payments made and to be made as above provided party of the second part hereby releases party of the first part from all claims which he may have against them for services and for contractual obligations of every kind and nature whatsoever, and accepts same as full and liquidated damages and promises to vacate said premises on or before June 5, 1920.
“It is understood and agreed that this contract shall operate as a full acquittance and receipt from each of thé said parties to the other of all obligations between them of any nature and‘kind whatsoever.”
Shortly after the above agreement and settlement was signed, plaintiff sent Mr. Hall, an accountant, tp audit the books of the company and to prepare an income tax report. Defendant received Hall, and entertained him at his home on the plantation, and also entertained there the secretary and treasurer of the company, who appears to have been present at the time Hall arrived. During the course of the audit, defendant failed to render, in all respects, the assistance expected of him. This failure excited the suspicions of plaintiff; and thes^ suspicions, supported by partial information, as to real conditions, grew into convictions that defendant had misappropriated some of the funds, belonging to it, which came into defendant’s hands as manager of the plantation, and that defendant had used for his own gain some of its property which had been intrusted to him, instead of using it in plaintiff’s interest, and that plaintiff had been imposed upon in making the settlement of April 17, 1920, by the fraudulent statements of defendant, in rep *227 resenting to it that he had not misappropriated any funds belonging to it, and that he had not used any of its property for his own profit, when as a matter of fact he had.
Plaintiff, having reached the above conclusions, instituted this suit for the purpose of annulling the settlement of April 17, 1920, of recovering the $800 paid to defendant in that settlement, and of having decreed as belonging to it, certain real estate and personal property, which it alleges defendant purchased in his name, with its funds. Plaintiff also instituted this suit for the purpose of recovering judgment against defendant for various amounts of money alleged to have been misappropriated by him; and for the value of the services of one of the employees on the plantation, whom plaintiff alleges defendant used to further his own interests; and for compensation for the use of plaintiff’s employees, teams, and sawmill to cut, haul, and saw certain timber for defendant’s benefit; for the hire of nine mules, belonging to plaintiff, and used by defendant in the oil field near Homer; and also for compensation for the use of an automobile and truck, belonging to plaintiff, and alleged to have been used by defendant in furtherance of his own business and for the pleasure of his family. Plaintiff also obtained an order for a writ of injunction, enjoining defendant from exercising any functions as manager of the plantation, and from interfering with its affairs, or with the sawmill or commissary, located thereon, and from disposing of the real estate alleged to have been purchased by defendant in his own name with plaintiff’s funds; from removing from the plantation any of the personal property alleged to have been similarly i>urchased by defendant, and prohibiting him from entering on the plantation and from occupying the dwelling house thereon located. Plaintiff also obtained a writ of sequestration, and caused to be sequestered thereunder, a Safe, a typewriter, a desk, and certain accounts and documents belonging to it, which had been in the hands of defendant, but which at the time were in the possession of the sheriff.
Defendant filed motions to dissolve the writs of sequestration and injunction. These were referred to the merits without prejudice to either side. Defendant then filed a plea of estoppel based upon the settlement evidenced by the agreement of April" 17, 1920, and then filed his answer to plaintiff’s demand. In his answer, defendant denies that he was guilty of fraud in making the settlement of April 17, 1920; avers the validity of that agreement; denies that he diverted to his own use any of the funds or property of plaintiff; and reconvenes for the sum of $1,-000, the amount agreed to be paid him in the settlement of April 17, 1920, and for damages for the wrongful issuance of the writ of injunction. He also reconvenes for damages, based on other grounds, which, however, it is unnecessary to mention, for the reason that they are not urged in this court.
The lower court rendered judgment rejecting plaintiff’s demand and decreeing defendant tí> be the owner of the land and personal property alleged by plaintiff to have been purchased by defendant, in his name, with plaintiff’s money, and recognizing the validity of the settlement of April 17, 1920. That court also rendered judgment in reconvention, in favor of defendant, for the $1,000 stipulated to be paid him in that settlement, with legal interest thereon from Máy 5, 1920; and for $100 damages, for the wrongful issuance of the injunction, with legal interest thereon from November 8, 1920, $100 of which sum is for attorney’s fees and the balance for annoyance, vexation, loss of time, and interference with business suffered by defendant. The court below rejected all other claims for damages sued for in reconvention, including those for the unlawful issuance of the writ of sequestration.
*229 Plaintiff has appealed from the above judgment. Defendant has filed no answer to the appeal, but in his brief asks that the judgment be affirmed.
 It is manifest that the agreement of April 17, 1920, quoted in full above, and executed by the parties to this suit, is a full and final settlement of all pecuniary obligations existing between them on that date of any nature or kind whatsoever, and should be given effect as such, unless some ground exists for annulling it. Plaintiff contends that this ground exists, in that it signed the instrument under a serious and grave misapprehension of facts, superinduced and brought about by the false and fraudulent statements of defendant in respect to the status of accounts existing between him and plaintiff, and particularly by defendant’s statement, made before and at the time of the execution of the instrument, that he had not used, during the period of his management, any of the funds or property of plaintiff for his own purposes or gain, when, in truth, he had. The instances in which it is contended that defendant thus misappropriated the funds and used the property of plaintiff are, fully set forth in plaintiff’s petition, and have been outlined in this opinion in stating the purposes of this suit.
The cause alleged for annulling the settlement made is ample. The question is whether the evidence establishes that cause. A careful review of it, which is voluminous, satisfies us that, while defendant is subject to criticism for the manner in which he kept accounts of his disbursements and receipts as manager, yet that plaintiff has failed to prove that defendant diverted any of its funds for the purpose of purchasing real or personal property for himself or for any other purpose, or that he used any of plaintiff’s property for his personal gain. It is true that the evidence shows that defendant used plaintiff’s teams to haul his own timber to the sawmill on the plantation, and used the mill for the purpose of sawing the lumber, but it is also true that he did so on the same terms and conditions upon which he hauled and sawed timber for others in the neighborhood ; that is to say, on terms of one half of the lumber manufactured out of the timber for the owner thereof, and the remaining half for the mill. The mill received its half. It is also true that defendant sent nine of plaintiff’s mules to the-oil field near Homer, but this was at a time when they were not needed on the plantation, and when it was believed that by sending them there they— would earn something for plaintiff. The project, due to continued rains, proved a failure, but it does not appear that defendant received anything from the venture, which he diverted to his own purposes. It is also true that defendant, while manager of the plantation, purchased for himself some 80 acres of land and a little personal property, yet we think that it satisfactorily appears, as we have said, that he did not do so directly or indirectly with any funds belonging to plaintiff.
Plaintiff, therefore, having failed to prove the fraud alleged in the making of the settlement of April 17, 1920, which was intended to be nothing more than a compromise settlement, and having failed to establish the allegations of its petition in other respects, including those for the injunction, its demands against defendant must be rejected.
In so far as concerns defendant’s reconventional demand, it contains only two items which are before us for consideration. These are the demand for the $1,000, which it was agreed should be paid defendant in the settlement of April 17, 1920, and the demand for damages, in so far as allowed by the lower-court, for the unlawful issuance of the writ of injunction.
In view of the fact that we have recognized the validity of the settlement in which it was *231 stipulated that the $1,000 mentioned in that settlement should be paid defendant, and as the condition has occurred, upon the happening of which it was agreed that this sum should he paid, it follows that it must be allowed.
In reference to the second item of reconventional demand 'before us for consideration — that is, the item for damages for the wrongful issuance of the writ of injunction — as we have seen, the lower court allowed defendant $400 damages, $100 of which was for attorney’s fees, and the balance for annoyance, loss of time, and interference with business caused by the injunction. As the injunction issued wrongfully, and as defendant suffered some damages, he is entitled to a judgment for the damages suffered. However, in allowing them, we think the lower court erred in rendering judgment for .attorney’s fees. While it is true that a motion to dissolve -the writ of injunction was filed, and was referred to the merits without prejudice to either party, yet it is also true that this motion involved a trial on the merits, and that the injunction was in fact ■dissolved on the merits, and not ón the motion. Under the circumstances, attorney’s fees will not be allowed as damages, for to ■do so would be to allow the fees virtually for defending the suit on the merits, which is not permissible. We, therefore, think that the judgment appéaled from should be ■amended by rejecting the attorney’s fees. We are also of the opinion that it should be .amended by reducing the remaining damages .allowed by the lower court for the wrongful issuance of the injunction from $300 to $100. Possibly, defendant suffered other loss by reason of the injunction, but the only loss which we find proved is the loss of time' and inconvenience suffered in being forced to vacate the house on the plantation about three weeks before the appointed time. We think that $100 will fully compensate plaintiff for that damage. In so far as the damage suffered on account of interference with business, we find none proved. It is true, there is evidence touching the failure to consummate the sale of a jack because of the injunction, but that failure is not satisfactorily proved, and therefore damages on that account cannot be allowed.
During the last day of the trial, defendant dismissed as of nonsuit a part of his reconventional demand, after considerable evidence had been offered in support of the part dismissed. As judgment was rendered by the trial court in favor of defendant on a part of the remainder of the reconVentional demand, that court taxed plaintiff with the costs of that demand as well as of the main demand, which plaintiff also lost. The costs thus taxed include those for taking the evidence on that part of ’ the reconventional demand dismissed on motion of defendant. Plaintiff complains of this. Under the circumstances, we think that plaintiff is entitled to relief in this respect, and that the trial court should be directed to ascertain the amount of those costs and tax them against defendant.
For the reasons assigned, it is ordered, adjudged,-and decreed that the judgment appealed from be amended by reducing the damages allowed for the wrongful issuance of said writ of injunction from $400 to $100, and b'y casting defendant for the costs of taking the evidence on that part of the re-conventional demand- nonsuited by him, the amount thereof to be ascertained and taxed by the lower court, and, as thus amended, that said judgment be affirmed. It is further ordered that one half of the costs of this appeal be taxed against the plaintiff and the other half against the defendant.