No. 3414

Second Circuit

FRAZIER v. ROBINSON

(March 12, 1929. Opinion and Decree.)

Parsons and Colvin, of Mansfield, attorneys for plaintiff, appellee.

Thigpen, Herold, Lee and Cousin, of Shreveport, attorneys for defendant appellant.

ODOM, J. We find in the record the written opinion of the Judge of the District Court which sets forth concisely the pleadings and the issues involved, an elabcrate discussion of the facts, which opinion is in full as follows:

## OPINION OF THE DISTRICT COURT

"Plaintiff alleges that on or about November 10, 1926, the defendant employed him to obtain an oil and gas lease from one Johniken, covering the NW¼ of the NW¼ of Section 20, Township 10, Range 12, in Sabine Parish; authorizing him to pay not exceeding $5.00 per acre for the forty, and as compensation for his services, agreed to carry him, Frazier, for a one-half interest. That is, pay him one-half of the net proceeds of the lease.

"It is further alleged that on November 11th, plaintiff purchased the lease for $135.00 and delivered it to the defendant, who repaid the cost to him thereof.

"It is alleged that the defendant sold the lease for $3,000.00 plus an overriding royalty of one-twenty-fourth of the oil produced from the lease. He prays for judgment for $1432.50, being one-half of the sale price less the alleged cost price, and for one-half of the one-twenty-fourth royalty.

"The defendant admits employing plaintiff for the purchase mentioned, denying authority to pay as alleged, and generally denying plaintiff's allegations, except it is admitted that the lease was delivered to him and that he sold same for the consideration alleged. By an amended answer the defendant pleaded in the alternative that he had settled and adjusted plaintiff's demands on or about May 21, 1927, by delivering to him an assignment for one-half of the royalty reserved in the sale of the lease.

"As is stated in plaintiff's brief, the admissions and testimony of the parties has resolved the issues of the case to the following:

"(1) Did plaintiff exceed his authority by paying cash for the Johniken lease, or had the defendant authorized him to pay cash for the same? Did defendant only employ plaintiff to secure a 'free lease' from Mr. Johniken?

"(2) Did plaintiff thereafter agree that he would accept one-third of the proceeds of the lease as his portion thereof, instead of one-half thereof?

"(3) Did plaintiff on May 21, 1927, accept an adjustment and settlement in compromise of his claims, by accepting a conveyance of one-half of the one-twenty-fourth royalty reserved in the sale of the lease?

"Defendant's counsel finds no fault with the statement of the first two issues above presented, but states the third issue in a different way; namely, Did plaintiff on May 21, 1927, accept a conveyance of one-half of the one-twenty-fourth royalty reserved in the sale of the Johniken lease, in full settlement of his interest in the net proceeds derived from the sale of said lease?

"Let's take up the issues presented in the order above stated.

First:

"It appears that the plaintiff until about October 1, 1926, had worked for Mr. Fair, who was an associate and partner of the defendant, in getting up blocks of acreage in De Soto and Sabine Parishes. This employment appears to have terminated about October 1, 1926; but was renewed from January 1, 1927, to May 21, 1927, when plaintiff was employed to assist in curative work on titles to the acreage in the Sabine block.

"About the first of November, 1926, while plaintiff was unemployed and during the period when Mr. Fair was so seriously ill and there was doubt whether he would recover, the defendant Robinson wrote plaintiff requesting him to come to his office; and on or about November 10th, plaintiff did call to see him in his office in Shreveport—the plaintiff being a resident of Mansfield and the defendant a resident of Shreveport.

"What the defendant wished to see plaintiff about was with reference to securing the Johniken lease, which gives rise to this lawsuit. The plaintiff and the defendant do not agree as to what took place at this interview, but the Court is inclined to the belief that the plaintiff's recollection of what took place at the interview is correct. Plaintiff testified that previous efforts to obtain the 20-acre free lease from Mr. Johniken had failed, but that Mr. Johniken had promised to execute a lease when a well was begun on the block. He further testified that defendant told him to try to get the free lease, but also to get a lease on the entire forty if he had to pay for it. He states that the defendant gave him a limit of $5.00 per acre to pay for the lease; that he was unable to obtain the free twenty; and that $135.00 was the least amount for which he could obtain the forty acres. Accordingly, plaintiff paid the $135.00 for the forty.

"The defendant contends that he merely authorized plaintiff to attempt to secure the free twenty acres, denying that he authorized plaintiff to pay any cash for the lease; that plaintiff exceeded his authority when he paid for the lease.

"However, as the Court views the matter, it makes little difference whether the plaintiff was expected to get the lease free or to pay for it. He did pay for it and the defendant reimbursed him, and without stipulating for any change in the agreement that defendant was to carry him for a one-half interest in the lease. Plaintiff testified in this connection that when he handed the lease to Mr. Robinson, Mr. Robinson said something about his having paid too much, that he then called attention to the fact that the lease covered forty acres instead of twenty for which Mr. Robinson was entirely satisfied.

"Miss Davies, unintentionally, we think, corroborates the plaintiff's contention that he was authorized to pay for the lease by the statement made on direct examination that when Mr. Frazier came into the office Mr. Robinson, the defendant, took the lease and asked him how much he had paid for it. (Ev. page 45.) If the defendant had not authorized the plaintiff to pay for the lease why should he ask him the first thing how much he had paid for it.

"The defendant, Mr. Robinson, testified that at some later date he told Mr. Frazier that because his partner, Mr. Fair, had gotten well he thought it would be right that he, Frazier, should only share one-third of the Johniken lease.

"Mr. Robinson did not fix the time or place of any such statement, nor does he say expressly that Mr. Frazier acceded thereto. He doesn't know whether Mr. Fair was present at the conversation or not, and Mr. Fair when questioned could not state that he had heard any statement made by or in the presence of the plaintiff. Mr. Fair seems merely to infer that there was such an understanding.

"In the Court's opinion, up to May 21st the plaintiff had not agreed to reduce his interest from one-half to one-third. However, as already indicated above, even if

the plaintiff did exceed his authority, yet his action was ratified and the agreement continued when the defendant received the lease without stipulation for a change of the previous agreement that the defendant was to carry him for a one-half interest in the same.

### Second:

"As already above stated, the Court is convinced that the original agreement was that the plaintiff should be carried for a one-half interest, and that Mr. Robinson's testimony that there was an agreement to reduce same from one-half to one-third is not supported by any corroborated circumstances. Moreover, the same fails to carry conviction in the Court's mind that Mr. Robinson fails to testify when any such agreement was made, and where it was made, and fails to give any of the substance of the agreement had at the time. The Court can easily understand why Mr. Robinson might feel obligated to carry Mr. Fair for an interest in the lease, but the Court sees no reason why any of the burden of carrying Mr. Fair for an interest in the lease should be passed on to Mr. Frazier who was under no such obligation to Mr. Fair as was his partner Mr. Robinson.

### Third:

"Relative to the issue as to the settlement on May 21, 1927, the plaintiff objected to parol evidence to show a compromise, and further that the written evidence offered was insufficient because it had never been signed by the plaintiff and accepted by him. The Court was inclined at the time, and is now of the opinion that this testimony should have been excluded, but same was admitted, and the Court will consider it.

"C. C. art. 3021 provides:

"'This contract (of compromise) must be reduced to writing.'

"The alleged statement in this case was reduced to writing, and a place was provided on it for the signature of the plaintiff but same was never signed by him.

"As to what took place on May 21st, there is not much difference in the testimony of the witnesses. On that occasion the defendant made a settlement with Mr. Frazier for his salary and expenses covering the period since January. There was a discussion of the Johniken lease.

In this discussion Mr. Robinson called the plaintiff's attention to the fact that Mr. Fair had gotten well and should participate in the lease. Mr. Robinson thought it would be fair for each of them to have a one-third interest in the lease. Mr. Frazier testified that Mr. Robinson stated that they had been out considerable expense on the trip to California by Mr. Fair, and attorney's fees, etc., but that Mr. Robinson wanted to see him, plaintiff, realize some cash out of the matter, and therefore would pay him $500.00 in cash and give him one-half of the royalty. Mr. Frazier was willing to accept $500.00 and one-half interest in the royalty, but states that when the assignment of the royalty was tendered to him he asked for his check for $500.00, and being informed that he had been offered an option of $500.00 or the royalty, said to Robinson, 'Why don't you keep it all.' Mr. Frazier says that Robinson then took the assignment and that he and Mr. Fair turned to a discussion of their matter, which also ended in a controversy.

"Now, as against plaintiff's testimony as to what occurred on May 21st, the defendant, Mr. Fair and Miss Davies all testified that the plaintiff was offered his option of $500.00 or the royalty, and that he accepted the royalty, and that the defendant later mailed to plaintiff the assignment which is in the record.

"May 21st fell on Saturday, and the discussion above referred to took place in Mr. Robinson's office on Saturday afternoon. The explanation made by the defendant for failure to deliver the assignment to plaintiff on the Saturday afternoon in question is that Judge Clifton Davis who usually acted for them as notary, and whose office was across the hall from theirs, was not in his office at the time, and therefore the assignment was returned to be signed by a notary. They testified that this was done later and on the following Monday the assignment was mailed to Mr. Frazier.

"On receipt of the assignment, Mr. Frazier took the same to his attorney who called Mr. Robinson on the phone, and also wrote him that Mr. Frazier would not accept the assignment as full payment of his claim.

"The Court listened attentively to the testimony in this case, and has since refreshed its memory by reading the testimony of all the witnesses. Although in number the defendant's witnesses preponderate as to what took place in Mr. Robinson's office on May 21st, the Court is not convinced that Mr. Frazier ever did accept the settlement offered him. The Court is of the opinion that by his failure to emphatically repudiate the offer made him, Mr. Frazier perhaps left the defendant, Mr. Fair and Miss Davies under the impression that he would accept the assignment of one-forty-eighth royalty in settlement of his interest in the lease.

"It is undoubtedly true that Mr. Frazier failed to enter into a heated controversy with Mr. Robinson, or for that matter, any controversy at all, but we do believe that when the assignment was tendered Mr. Frazier that he quietly passed it back to Mr. Robinson as he states he did, and said to him, 'Why don't you keep it all,' and that that closed the interview so far as that part of it was concerned. We think it is even probable that Mr. Robinson still thought when he mailed the assignment to Mr. Frazier that Mr. Frazier would accept the same.

"We gather from the testimony in the case that Mr. Frazier is not a man of large means, from which it would follow that his one-half interest in the proceeds of the sale of the lease was a matter of undoubted importance to him, and the Court is not willing to believe that Mr. Frazier would have let himself be talked into accepting a one-third interest instead of one-half, as he was entitled to on the occasion in question. It seems to the Court so utterly unreasonable, and so contrary to human nature, that Mr. Frazier would donate somewhere between a thousand and fifteen hundred dollars to his employers that we are utterly unable to believe that he did so. Mr. Frazier says that he did not agree to take the one-forty-eighth royalty in full settlement of his claim, and the Court believes him, although, as stated before, the Court is willing to believe that Mr. Robinson, Mr. Fair and Miss Davies gained the impression from Mr. Frazier's mild manner during the interview that he would accept the assignment in full settlement of his claim.

"We will discuss briefly now the reasons given by Mr. Robinson and his partner to Mr. Frazier as to why he should accept the one-forty-eighth royalty and give up his one-half interest in the $3000 for which the lease was sold to the Magnolia Company. It seems that the Johniken 40 acres, together with four other 40-acre leases, were affected by a common defect in title, requiring a quit-claim from the Davis heirs; that the Arkansas Fuel Company held a lease on three of the 40's, and the Phillips Petroleum Company held a lease on one 40; that Mr. Robinson and Mr. Fair undertook steps to cure the title to all five 40's with the understanding that the expense would be proportioned to each party. It would appear that a Mr. Welborn also owned some lands affected by the same defect.

"Mr. Fair and Mr. Craig, a Mansfield attorney, made a trip to Arizona and California to obtain a quit-claim from the Davis heirs.

"Mr. Robinson rendered to the Arkansas Fuel Company and the Phillips Petroleum Company a statement showing a total expense account of above $3100, and they reimbursed him approximately $2500 as their portion of the expense. Included in this statement on which he collected as above stated from the Arkansas and Phillips Companies, were the following amounts:

| | |
|---|---|
| Paid to Mrs. White, et al. | $1385 |
| Paid Mr. Craig's expenses | 250 |
| Paid Mr. Craig's services | 250 |
| Paid Mr. Fair's expenses | 510 |
| Paid Mr. Fair's salary | 750 |

$3145

"The testimony shows that the $1385, although it had been advanced by Mr. Fair, was returned by Mr. Welborn, the landowner. So far as the plaintiff is concerned, this item should not have been charged. It was also admitted that the item of $250.00 for Mr. Craig's expenses was also returned. Mr. Robinson appears to have represented to Mr. Frazier that the expense chargeable against the Johni-

ken lease amounted to something like $1150.00.

"In view of Mr. Robinson's admissions, the legitimate deductions for expenses for curing titles to the lease could not have amounted to anything like $1100, and, therefore, even if it be conceded that Mr. Frazier agreed to a compromise when induced by untrue statements, such compromise should be disregarded. See C. C. Art. 1824, 1827, 3079. Also Packard v. Ober, 26 La. Ann. 424, and Three Rivers Oil Company v. Laurence, 153 La. 224, 95 So. 652.

"The defendant also argued to plaintiff that the title is still imperfect and that same was accepted by the Magnolia Company only because he and Mr. Fair warranted the title. The answer to this is that Mr. Frazier never agreed and was never asked to agree, when the original contract was entered into, to warrant the title himself.

"Under the terms of Articles 366 and 367 of the Code of Practice, it is particularly provided that pleas of compensation, or set-offs, must be specially pleaded. The defendant has failed to plead any set-offs in this case, nevertheless, the Court feels that there are certain charges that should be deducted from the amount awarded the plaintiff.

"There should be a deduction of $2.50 for recording; $67.00 for abstract, and $10.00 for filing charges of the curative work.

"Mr. Fair went on the witness stand, but did not verify the correctness of his salary and expense account as shown by the statement submitted to the Arkansas and Phillips Companies, and the fact that they settled on the statement rendered them is no proof of its correctness. The statement rendered the Arkansas and Phillips Companies showed Mr. Fair's expenses as being $510.00, and his salary as being $750.00. On the other hand, it showed Mr. Craig's expenses as being $250.00 and his services as being $250.00. The Court will fix Mr. Fair's expenses and salary at that which appears to have been fixed by the defendant for Mr. Craig, the attorney.

"As there were five 40's we divide the $500.00 made up by adding $250.00 as Mr. Fair's expenses and $250.00 as his salary, in order to ascertain the amount chargeable against the 40 which is in controversy, which would make $100.00, which, in our opinion should be added to the deductible expense of curing the title to the lease.

"The items of deductible expenses as indicated above are as follows:

| | |
|---|---|
| For abstract | $67.00 |
| For filing | 10.00 |
| For recording | 2.50 |
| For original purchase price of the lease | 135.00 |
| Proportion of Mr. Fair's salary and expenses chargeable to the Johniken forty | 100.00 |
| | $314.50 |

"Subtracting this from $3000, it leaves $2685.50. The plaintiff is entitled to one-half of this amount, which is $1342.75. For this amount the plaintiff will have judgment."

———

Counsel for defendant in brief say, in substance, that it matters not whether the assignment of the royalty interest be considered as a settlement or as a compromise, the assent of the plaintiff thereto cannot be shown in the absence of his signature by parol testimony, and that the crux of the matter in dispute is whether or not a settlement was made with plaintiff on May 21, 1927.

The testimony shows that on May 21, 1927, the plaintiff and defendant discussed a settlement of their differences and that there was on that date drawn up a document which, defendant claims, set out in full the agreement and settlement reached, which document was never signed by plaintiff. Whether parol testimony was admissible to show the compromise and settlement entered into is not material for the reason that the Court heard and considered the testimony of all the witnesses as to what transpired between the par-

256

ties on that date. It is plaintiff's contention that the instrument did not set forth the agreement had, and it is defendant's contention that it did. As is shown by the written opinion above copied, the District Judge considered the testimony of all the witnesses and reached the conclusion that plaintiff did not agree to the compromise and settlement which defendant contends was made. Our reading of the record discloses that the District Judge did not manifestly err in his conclusions. He has, with the greatest care and precision, analyzed the testimony, and we think his conclusions are correct.

For the reasons assigned by the District Judge, the judgment appealed from is affirmed, with costs in both courts.