No. 4069

Second Circuit

## GREEN v. NORSWORTHY

(July 14, 1931.  Opinion and Decree.)
(October 1, 1931.  Rehearing Refused.)
(November 3, 1931.  Writ of Certiorari and Review Refused by Supreme Court.)

Hawthorne & Files, of Bastrop, attorneys for plaintiff, appellee.

Todd, Todd & Fraser, of Bastrop, attorneys for defendant, appellant.

McGREGOR, J.  This is a suit involving the ownership of a mule which, at the time of the trial, was between three and one-half and four years old.  The case involves purely a question of fact.  The plaintiff and the defendant are farmers who live a few miles apart in the lowlands of Morehouse parish.  In the year 1927, the plaintiff was the owner of a mule colt that was born in the month of May of that year in the hills whence the plaintiff had driven his stock to protect them from the high water.  As soon as the water receded, he brought the colt home with its mother, where it stayed until the spring of 1928, when he put it in his pasture, about three-quarters of a mile from his home.  In July of that year, he turned it out of the pasture on to the range away from its mother.  During the rest of 1928 and all of 1929, the colt was never brought home and was separated from its mother,

though the plaintiff testifies that he was very proud of it and took special pains to see it as often as he could while it was in the woods.

In February or March, 1930, the plaintiff hired two negro men, Jeff Morgan and Frank Robinson, to gather up all his work stock that was still out on the range. Some few horses and mules were driven up, and among them was a young mule that had never been broken to the plow. Plaintiff and his negro tenants identified this animal as the colt that he had turned out on the range in July, 1928. As it was large enough and old enough to work, the plaintiff had it broken to the plow and used it in making his crop that season. It was never turned out again, but was kept on plaintiff's premises.

Some time soon after the overflow of 1927, another mule colt was born in that same community which was the property of a negro by the name of Albert Briley. From the evidence, it is apparent that Briley kept in closer touch with his colt than the plaintiff did with his, for the reason that he kept it with him from the time it was born until he sold it in 1930. About the latter part of January, 1930, Briley sold his colt to the defendant, who kept it up until about the middle of March when he turned it out with a roan colt. From that time the defendant never saw it any more until about the latter part of January, 1931, when he found a young mule on plaintiff's premises which he identified as being the colt he had bought from Albert Briley about a year before and had turned out. This was the same young mule that Jeff Morgan and Frank Robinson had driven up for the plaintiff, and which he identified as being the colt which he turned out in July, 1928. So that the plaintiff and defendant were claiming the same colt.

When defendant found the young mule in the plaintiff's field and decided that it was the same one that he had bought from Albert Briley the year before, he at once took the matter up with the plaintiff, and endeavored to convince him that it was his by taking several persons to him to testify to the fact. Negotiations were carried on for several days, but the plaintiff was as firmly convinced that it was his mule as the defendant was that it was his, and he, therefore, refused to surrender it. The defendant decided to assert his rights to what he believed was his property and took the mule out of plaintiff's field and carried it to his own premises. Being unwilling to acquiesce in this move on the part of the defendant, plaintiff brought this suit to assert his ownership of the mule, and had it seized under a writ of sequestration. Defendant then had the mule released from seizure by giving bond. On trial in the lower court, there was judgment in favor of the plaintiff declaring the mule to be his. From that judgment, the defendant has appealed.

### OPINION

It is apparent from the evidence that there were two mule colts in the neighborhood of plaintiff and defendant that were about the same age and looked so much alike that it was difficult to tell them apart. Evidently one of them either died or strayed away or was stolen. At least it disappeared, as the whereabouts of only one is known, and it is claimed by both the plaintiff and defendant. Cases of this kind are always difficult, especially when both parties are as honest in their convictions as we believe both of these litigants

are. It is incumbent always upon the plaintiff to make out his case by a preponderance of the evidence.

## ANALYSIS OF TESTIMONY

Jeff Morgan, a negro tenant of the plaintiff, testified that he helped Frank Robinson drive the colt up after it had been in the woods away from its mother from July, 1928, until February or March, 1930; that when it was turned into the lot where its alleged mother was, it ran to her and appeared to recognize her and acted as a young colt would act toward its mother. He testified that he knew the plaintiff's colt from the time it was born, saw it all along during the time it was in the woods, and that both at the time that he and Frank Robinson put the mule involved in this case in plaintiff's lot, and at the time when defendant took possession of it, he recognized and identified it as being plaintiff's colt that was born in the hills during the overflow of 1927. Sarah Smith, a negro woman, testified that she knew the mule in controversy from the time it was born until it was taken from its mother to be weaned in July, 1928; that she never saw it any more then until it was put in plaintiff's lot in 1930, as above set out, and that as soon as it was turned in the lot it showed that the effort to wean it had been unsuccessful; that it recognized its mother and ran to her as a young colt would do. She, too, testified that she recognized and identified it at the time of the trial as the plaintiff's colt that was born in the hills during the overflow of 1927. The plaintiff himself testified that he had seen his colt enough from the time that it was born until the time this mule was put in his lot to be able to recognize and identify it as the one that was born in the hills during the overflow in 1927. That is all the testimony introduced by the plaintiff to show that the mule in dispute is his. Dr. J. V. Jones, a veterinarian, testified that the mule in question was between three and one-half and four years old and that it could not be any younger than three and one-half years. J. Y. Smith and Tom Miller testified that they made crops on Mr. Henry Gates' farm in 1928 with Albert Briley, and that they know that he moved there in the fall of 1927 and that his colt was not born until about the middle of May, 1928. They appear to be absolutely positive of this fact. If Briley's colt was not born until during May, 1928, then at the time of the trial it would have been less than three years old, and, under the testimony of Dr. Jones, the mule in question could not be Briley's colt. Besides himself, plaintiff produced two witnesses only who identified the mule in question as being his colt. He produced two others who swore that Briley's colt was less than three years old, and, as stated above, Dr. Jones, the veterinarian, testified that the mule in controversy was at least three and one-half and possibly four years old. The above is a complete review of all the plaintiff's testimony.

On the other hand, the defendant produced eleven witnesses besides himself. To begin with, it is proved beyond doubt and admitted that Albert Briley did own a mule colt, and that he did sell it to defendant in January, 1930. Albert Briley himself testified that his colt was born during the crop season after the overflow of 1927 on Mr. Bowes' place. His wife, Mattie Briley, testified the same thing, and they both testified that they saw the colt all the time from its birth until January, 1930, when it was sold and delivered to the defendant. They both recognized the mule in question as being the colt which they raised, first on Bowes' place

and then on Mr. Henry Gates' farm, and then on defendant's plantation. It is proved that Briley was on the Bowes place in 1927, on the Gates farm in 1928, and on defendant's farm in 1929, and that the colt was on all three of those places. Mr. Bowes was sworn as a witness for the plaintiff, but his testimony is as favorable to the defendant as it is to plaintiff. At first he thought the Briley colt was born in the latter part of 1926, but after thinking it over he decided it was the latter part of 1927, as he felt sure it was born after the overflow of 1927, but he is absolutely certain that it was not born during the planting and growing of the crop of that year, but that it was born while they were gathering the crop, so whether it was in the fall or spring of that year, his testimony as a witness for the plaintiff flatly contradicts two of plaintiff's witnesses who say that the colt was born on Henry Gates' farm about May 15, 1928; a difference of six months. Mr. A. S. Reddick was familiar with Albert Briley's colt from the beginning, and thinks that the mule in controversy is the same animal. He remembers that the colt was stringhalted in the left hind leg, and the same thing is true of the mule. Mr. Henry Gates testifies that he knew the Briley colt from the beginning, and knew when defendant bought it and that the mule in controversy is that colt grown up. He testifies positively that it was brought to his place as a colt and was there all of 1928, and that it was not born there. This corroborates Albert and Mattie Briley, who swear that it was born in 1927 on Mr. Merton Bowes' place, and contradicts Messrs. Smith and Miller, the plaintiff's witnesses, who testify that the Briley colt was born on the Gates' place, in May of 1928. Mr. Gates further testifies that the Briley colt was stringhalted, and that the same thing is true of

the mule in controversy. Frank Robinson, the negro man whom the plaintiff hired to put the mule in the lot, testified that it showed no signs of recognizing the alleged mother of plaintiff's colt, but that on the contrary it jumped over the fence out of the lot, and it took considerable help to get it back. At least two of the neighbors of plaintiff assisted in recapturing the animal, and, in order to keep it in the lot, it was necessary to hobble it with a pole. If the colt had really found its mother and had been as familiar with her as Jeff Morgan and Sarah Smith testified, Frank Robinson would have seen it. Furthermore, it would not have been so wild as to break out of the lot by jumping a high fence. Mr. W. C. Perdue, who was working for plaintiff when the mule was turned in his lot, testified that it did not appear to have found an animal that it thought was its mother. He also testified as to the mule jumping out of the lot, and the trouble with which it was recaptured. This same thing was testified to by Mr. Fontenot, who assisted in getting the mule back into the lot. Mr. Hosey Humphrey testified that he knew Albert Briley's colt, and that the mule was that colt grown up. Mr. Allie Burks testified that he knew the colt at the time that defendant bought it, and that the mule is that colt grown up. Charles Vosburg never knew the colt until defendant bought it. He knew it well when it was turned out in the spring of 1930, and knows it is the same mule. Mr. I. Vosburg knew the colt well at the time it was turned out, and recognized it as the same mule.

It might be argued that plaintiff had the mule in controversy in his lot in 1930 before defendant turned his out and that, therefore, it is the defendant's colt that is lost, and that the mule in controversy

belongs to plaintiff. The answer to that is this: While some of plaintiff's testimony shows that he got this mule up about March 1, there is testimony equally reliable that it was in April; so that time is not definitely fixed. Taking all the testimony together, we find that the plaintiff had this mule put up in his lot after defendant had turned his mule out. A fact more conclusively proved is this: When defendant turned his colt out in the spring of 1930, he turned out with it a roan colt that every one recognized. When the mule was found and put into plaintiff's lot, this same roan colt of the defendant's was with it, and had to be separated from it in plaintiff's lot. Since the roan colt was out on the range at this time, and since it was turned out with the mule colt by defendant, it is an indisputable fact that defendant's colt was turned out before plaintiff put this mule in his lot, and it is not impossible for it to be the one that defendant turned out. Another strong indication that the mule belongs to defendant is that Albert Briley and his wife and several other witnesses, who personally knew the Briley colt when it was born or when defendant bought it, not only recognized the mule as being the same animal, but recognized two distinct marks on the mule. When the colt was little it was stringhalted in the left hind leg, and the mule in litigation has the same trouble. When the colt was little it was cut on one of its hips and the hair came back white. The mule in question has the same white spot of hair.

We have the highest regard for plaintiff's integrity, and it is his firm conviction that he recognizes this mule as being the colt that he raised, but we believe that he is mistaken, and that he lost track of the colt some time between July, 1928, and the spring of 1930, during all of which time it was out in the woods away from its mother. Jeff Morgan and Sarah Smith are totally discredited in a very important part of their testimony relative to the recognition by the mule of its alleged mother. Messrs. Smith and Miller are contradicted by Mr. Bowes, one of plaintiff's own witnesses, as well as by a number of defendant's witnesses. The latest date that can possibly be fixed by Mr. Bowes' testimony for the birth of the Briley colt would make it considerably over three years old at the time that Dr. Jones looked in the mouth of the mule in question. So, we find that the age of Briley's colt or mule would not preclude it from being the mule in question.

In their brief, counsel for plaintiff call our attention to the fact that the appellate courts never disturb the findings of the lower courts, where only questions of fact are concerned, unless manifest error is found. We agree with this statement. We regret ever to disagree with our brethren of the lower court, but when we have a case appealed to us which we find to be manifestly erroneous, it is our duty to say so. The plaintiff must always make out his case by a preponderance of the testimony, either in quantity or quality, or both. In this case, the plaintiff and defendant are equally credible and honest and high-minded. Their testimony is conflicting, and one is offset by the other. The plaintiff produced only two witnesses who even attempted to identify the mule in litigation as being the plaintiff's colt grown up. The plaintiff produced two witnesses to show that the defendant's mule is too young to be the mule in litigation, but these two witnesses are contradicted by one of plaintiff's own witnesses, and by five or six of defendant's. Furthermore, the mule is rec-

ognized by a number of witnesses by two infallible signs; .viz.,. a patch of hair on one hip, and by its being stringhalted in its left hind leg. Both of these signs were present with the Briley colt and were with the mule in litigation. No attempt was made to deny either of these two signs, nor was there any evidence that plaintiff's colt had either a patch of white hair, or was stringhalted. Furthermore, several of defendant's witnesses recognized and identified the mule as being the Briley colt grown up, independent of the two signs named above. So we find that not only has the plaintiff failed to prove his ownership by a preponderance of the testimony, but the defendant has proved his ownership by the same degree of preponderance of the evidence that the law requires of a plaintiff. Even though the defendant had not taken possession of the mule as he did, and had become plaintiff instead of defendant in a similar suit, the same evidence would have been conclusive of his ownership of the mule.

In his answer, the defendant assumed the position of plaintiff in reconvention and prayed for damages in the sum of $25 ·for rent of the mule for the year 1930, and for $25 attorney's fee for dissolving and setting aside the writ of sequestration. No separate motion to dissolve the sequestration was cited and, as was said in Fariss v. Swift, 156 La. 17, 99 So. 893, citing the case of Three Rivers Oil Co. v. Laurence, 153 La. 224, 95 So. 652:

"Whenever * * * it is impossible to differentiate between the attorney's services for dissolving the attachment and those for defending the suit, such attorney's fees cannot then form an element of the damages to be allowed for the wrongful issuance of the writ."

See, also, Smith v. Keith Motors Co., 163 La. 395, 111 So. 798.

All the testimony in this case was on the merits, and was introduced solely to establish the ownership of the mule. The question of the sequestration was apparently lost sight of; therefore, this demand of the defendant cannot be allowed. The plaintiff resisted the demand for $25 for rent of the mule, on the ground that it is not such a demand as is permitted to be brought in reconvention. Defendant is in the position of demanding to be recognized as the owner of the mule in controversy. As soon as he is recognized as the owner, he is at once, by virtue of that fact, entitled to rent on it during the time that he was deprived of its service. If he had deferred that demand to be brought in another suit, it would have been a useless multiplication of suits; ·a thing that the law abhors. The fact of whether plaintiff owes defendant rent on the mule depends solely upon who is the owner of it, and the matter is, therefore, wrapped up in the same suit and grows out of the same transaction, and is necessarily connected with and incidental to it. Under the evidence, the mule's services for the year 1930 were worth $25, and defendant is, therefore, entitled to recover that sum.

For the reasons assigned, it is hereby ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, avoided, annulled, and reversed, and that there now be judgment in favor of defendant rejecting the demands of the plaintiff, and recognizing the defendant as the owner of the mule described in plaintiff's petition, and entitled to its possession; it is further ordered that there be judgment in favor of defendant against the plaintiff for the sum of $25 rent for the said mule for the year 1930, and that plaintiff pay all the costs of both courts.